James P. WATKINS, Plaintiff-Appellant,

v.

Richard S. SCHWEIKER, Secretary of Health and Human Services, Defendant-Appellee.

No. 81–7427
Non-Argument Calendar.

United States Court of Appeals, Eleventh Circuit.

Feb. 4, 1982.

---

* Honorable Wesley E. Brown, United States District Judge for the District of Kansas, sitting by designation.

Adams, Barfield & Dunaway, Truitt A. Mallory, Thomaston, Ga., for plaintiff-appellant.

Bernard E. Namie, Asst. U. S. Atty., Macon, Ga., for defendant-appellee.

Before HILL, VANCE and HATCHETT, Circuit Judges.

JAMES C. HILL, Circuit Judge:

Appellant James P. Watkins attacks the decision of the Secretary of Health and Human Services (Secretary) that he is not entitled to Social Security disability insurance benefits for the period after November 5, 1978. Watkins alleged an inability to work due to persistent back pain.

Watkins previously was awarded disability insurance benefits on October 15, 1975 as a result of a back injury sustained in 1974. These benefits were terminated on April 30, 1977 by a decision which was upheld by administrative review through the Appeals Council. Watkins reapplied for benefits on November 5, 1978. That application was denied after a hearing before an administrative law judge (ALJ), whose decision the Appeals Council declined to review. In a district court challenge to the denial of benefits, the ALJ's decision was affirmed. That court's conclusion was based on a finding that the Secretary's denial of benefits was supported by substantial evidence on the record as a whole.

On appeal the claimant presents two arguments: (1) the ALJ erred as a matter of law in applying Appendix 2 of the regulations under 20 C.F.R. § 404.1569 (1981) to the facts of his case, and (2) the ALJ's decision is not supported by substantial evidence on the record as a whole. We conclude that both arguments are without merit and affirm the denial of benefits.

In essence Watkins' first argument merges into his second. In arriving at a disability determination, the Secretary considers the residual functional capacity of the par-

ticular claimant together with his vocational background to ascertain whether the claimant is able to engage in any substantial gainful activity despite his medical impairment. 20 C.F.R. § 404.1545(a) (1981). The tables contained in Appendix 2 of the regulations under 20 C.F.R. § 404, Subpart P, are guidelines for determining disability once the hearing examiner has made a decision concerning the particular claimant's residual functional capacity. In this case, the ALJ concluded that Watkins retained the ability to perform a full range of light work. He therefore, consulted the guidelines set forth in Table No. 2 of Appendix 2, which table applies when the claimant has a residual functional capacity limited to light work. Hence, in challenging the ALJ's application of Table No. 2, Watkins disputes the ALJ's determination as to his residual functional capacity.

■ This finding is subject to the same standard of review governing the ultimate decision on disability, the substantial evidence test set forth in § 205(g) of the Social Security Act, 42 U.S.C. § 405(g). We therefore turn to the evidence of record in the hearing before the ALJ.

■ Watkins underwent two laminectomies, in 1974 and 1975 respectively. Watkins continued to seek medical advice after that time because of pain running from his lower back down into the right leg. The record contains the reports of four physicians who examined Watkins: Drs. Dallas, Hazouri, Blackburn, and Crooms. The former two are treating physicians, the latter two consultative physicians who examined Watkins at the expense of the Social Security Administration.

An examination of Watkins by Dr. Robert E. Dallas, a general practitioner, on April 14, 1975 revealed pain and tenderness in the lumbar area. His diagnoses were postsurgery lumbar disc and depression. Record, Volume 2, at 126. His diagnosis was the same three years later in a report submitted on December 21, 1978, with the additional conclusion that Watkins' pain was probably of scar tissue origin. Record, Volume 2, at 204.

Following a consultative examination by Dr. John D. Blackburn, an orthopedic surgeon and internist, Dr. Blackburn reported on February 8, 1977 that Watkins experienced pain at 40 degrees on straight leg raising on the right side and at 55 degrees on the left side. Some limitation in flexion of the spine at the L4 and L5–S1 areas was noted, with limitation in flexion to the right but not to the left. X-rays revealed a slight narrowing of the L4–5 interspace and of the L5–S1 interspace. Otherwise, results were normal. Dr. Blackburn's diagnoses were (1) postoperative lower lumbo-sacral backache; (2) cervical mylagia symptomatic. Record, Volume 2, at 130.

Dr. Blackburn also completed a physical capacities evaluation of Watkins. Record, Volume 2, at 132. He restricted Watkins as to pushing and pulling movements, climbing stairs and ladders, balancing, and bending and stooping movements. He indicated that Watkins could reasonably be expected to lift frequently 10 pounds or less and to stand and work two out of eight hours or sit and work six out of eight hours. Watkins was capable of gross and fine manipulation with his hands and of reaching overhead. He concluded that Watkins could work within the limitations noted.

Dr. Louis A. Hazouri, a Board-certified neurosurgeon, treated Watkins for several years following Watkins' 1974 back injury. In an examination on August 15, 1977 Dr. Hazouri noted that Watkins continued to experience mild discomfort but was getting along well on Bufferin. Record, Volume 2, at 134. In a report submitted on April 17, 1978, Dr. Hazouri found that Watkins had good mobility of the spine, with some tenderness to the right of L5. Straight leg raising and sciatic stretch tests were negative. The general examination and general neurological evaluation were unremarkable, with the exception of Watkins' subjective complaints of pain. Dr. Hazouri noted that Watkins was receiving outstanding grades in the vocational retraining program he had entered. Record, Volume 2, at 193.

Following Watkins' hospitalization from April 18 through April 23, 1978, Dr. Hazouri reported that electromyographic findings suggested L4, 5, S1 nerve root involvement, but with marked improvement. X-rays of chest, lumbar spine, pelvis, and hips, including a bone scan, were unremarkable other than for the slight narrowing at L4, 5. The discharge summary noted negative neurological deficit. Dr. Hazouri concurred in Watkins' preference for no further surgery in light of the negative findings, Watkins' vocational retraining, and Watkins' improvement and ability to get along well. Record, Volume 2, at 194. In a letter dated September 13, 1978, Hazouri advised Watkins to continue an exercise program and vocational retraining. He further tendered the opinion that Watkins was unable to return to any gainful activity, based, however, only on Watkins' subjective complaints of pain. Record, Volume 2, at 202. Finally, in a letter dated November 28, 1979, Dr. Hazouri repeated this opinion. Record, Volume 2, at 213. He also completed a physical capacities evaluation in which he restricted Watkins with respect to climbing or balancing, fine manipulation, bending or stooping, and prolonged driving. Watkins could perform pushing and pulling movements and gross manipulation and could be expected to lift frequently 10 pounds or less. Dr. Hazouri indicated that Watkins could stand and work only two out of eight hours and could not sit and work six out of eight hours. Record, Volume 2, at 214.

Dr. C. Lyn Crooms, a Board-certified orthopedic surgeon, performed a consultative examination on May 24, 1979. Dr. Crooms noted a slight limp, which Watkins exaggerated when he thought he was being observed. Reflexes and sensation in lower extremities were good. Straight leg raising and sciatic stretch tests were negative, with the exception of Watkins' complaint of lower back pain on the latter. Watkins had a good range of motion of the lumbar spine in all directions with perhaps a twenty-five degree limitation of motion. X-rays showed no significant abnormalities. Record, Volume 2, at 205. Dr. Crooms completed a physical capacities evaluation, giving Watkins "the benefit of the doubt" in completing it because of Watkins' subjective complaints. Record, Volume 2, at 206. In his opinion Watkins could lift and/or carry frequently twenty pounds or less, stand and walk six or more hours in a normal work day, and sit and work as much as six out of eight hours. Record, Volume 2, at 207.

At the hearing before the ALJ, Watkins complained of constant pain in his back and right leg. Record, Volume 2, at 59, 60, 64. He stated that he attended vocational school for training in electronics four hours a day, five days a week and that he was unable to attend six hours a day. Record, Volume 2, at 62, 65.

■ Based on a review of the record as a whole, we conclude that there is substantial evidence to support the ALJ's finding that Watkins is able to perform a full range of light work. The regulations define light work as follows:

Light work involves lifting not more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b) (1981). The physical capacities evaluations by Dr. Blackburn and Hazouri indicated Watkins could lift or carry frequently ten pounds or less, with Dr. Crooms indicating twenty pounds or less. Both Dr. Hazouri and Dr. Crooms stated Watkins could perform pushing and pulling movements, and both Dr. Blackburn and Dr. Crooms felt Watkins could sit and

work most of a normal work day. Only Dr. Hazouri disagreed with the latter.[1]

With respect to Watkins' complaints of constant pain, the ALJ refused to credit this testimony, noting the essentially benign medical findings and his personal observation of Watkins during the testimony. We cannot say that this credibility choice was erroneous.

Having concluded on the basis of substantial record evidence that Watkins' residual functional capacity allowed him to perform a full range of light work, the ALJ then correctly applied Table No. 2 of Appendix 2. The rules contained in Table No. 2 reflect the major functional and vocational patterns encountered in cases in which a severe medically determinable impairment prevents an individual from returning to his past work.[2] As stated in § 200.00 of Appendix 2, "where the findings of fact made with respect to a particular individual's vocational factors and residual functional capacity coincide with all of the criteria of a particular rule, the rule directs a conclusion as to whether the individual is or is not disabled."

It is not disputed that Mr. Watkins is a younger individual (age 42), has a high school education (GED equivalent), and has skills as a former automobile mechanic that are transferable to other jobs. Thus, in light of his ability to perform light work, all of the criteria of Rule 202.22 are met and that rule directs the conclusion that Watkins is not disabled.

AFFIRMED.

1. Watkins objects on this appeal to the greater weight given to the consultative physicians' reports than to those of the treating physician. We acknowledge that the former Fifth Circuit has indicated that substantial weight must be given to a treating physician's testimony unless good cause to the contrary is shown. *See Smith v. Schweiker*, 646 F.2d 1075, 1080 (5th Cir. 1981); *Fruge v. Harris*, 631 F.2d 1244, 1246 (5th Cir. 1980). Nevertheless, § 205(g) of the Social Security Act mandates that we review the record as a whole. It presents significant testimony contrary to Dr. Hazouri's conclusion that Watkins is unable to sit and work most of the day. Moreover, Dr. Hazouri's own objective medical findings were consistently negative and showed no significant abnormalities.

Furthermore, Dr. Hazouri's opinion on the ultimate issue of disability—specifically that Watkins was unable to return to any gainful activity, Record, Volume 2, at 202, 213—is not dispositive. That determination is made solely by the Secretary based on medical findings. 20 C.F.R. § 404.1527 (1981).

2. Watkins was unable to return to the medium to heavy work required by his prior job as an automobile mechanic.