**W. E. VIEHMAN, et al.,
Plaintiff-Appellant,**

**v.**

**Richard SCHWEIKER, Secretary of
Health and Human Services,
Defendant-Appellee.**

**No. 81–5574.**

United States Court of Appeals,
Eleventh Circuit.

June 25, 1982.

---

Louis K. Rosenbloum, Stephen H. Echsner, Pensacola, Fla., for plaintiff-appellant.

Loretta B. Anderson, Tampa, Fla., for defendant-appellee.

Before FAY, VANCE and ARNOLD *, Circuit Judges.

* Honorable Richard S. Arnold, U. S. Circuit Judge for the Eighth Circuit, sitting by designation.

FAY, Circuit Judge:

In this appeal, we are called upon to review an order of the United States District Court for the Middle District of Florida, dismissing the plaintiff's complaint which sought review of an adverse determination by the Secretary of Health, Education, and Welfare. The plaintiff, William E. Viehman, on behalf of his daughter, Katherine E. Viehman, requested waiver of an overpayment of social security disability benefits pursuant to 42 U.S.C. § 404(b) (1976). The Administrative Law Judge [ALJ] ruled that Mr. Viehman had not proved he was "without fault" in the acceptance of the overpayment and was therefore not entitled to the waiver. The District Court adopted the findings of the magistrate, which recommended affirmance of the decision of the Secretary of Health, Education, and Welfare. As we are unable to discern whether the ALJ based his ruling on the sufficiency of the evidence presented or relied on a credibility determination of Mr. Viehman's testimony, we remand this case to the Secretary for further proceedings not inconsistent with this opinion. Reversed and Remanded.

*The Scenario*

Mr. Viehman applied for insurance disability benefits for his daughter Katherine on April 26, 1974; the application was approved. At that time, Katherine resided at Sunland Training Center in Fort Myers, Florida, and worked in the surrounding community under the supervision of the Center.[1] On June 24, 1974, she married Ronald Arsenio Rodriguez, who also worked under the supervision of Sunland Training Center. During his stay at Sunland, Mr. Rodriguez also received social security benefits. Mr. Rodriguez was discharged from Sunland on January 15, 1974. Apparently his benefits had been terminated in July,

1973, but he continued to receive checks through June, 1974. On January 13, 1976, a final dissolution of marriage was entered.[2]

According to testimony received during the administrative hearing, Mr. Viehman called the social security office to advise the Administration of his daughter's marriage. He asked to speak to Mrs. Lou Weaver, who had previously handled his daughter's application. As she was not available, he proceeded to explain his daughter's marriage to the social security representative who had answered the phone. He told her that his daughter was retarded and that she was marrying a retarded boy. He inquired as to whether he needed to comply with any further regulation with respect to continued receipt of the benefits.

The representative advised Mr. Viehman that nothing more need be done in view of the fact that his daughter was marrying another retarded person. No attempt was made to solicit additional information from Mr. Viehman concerning his daughter's social security number or Mr. Rodriguez's status as a benefits recipient. Thus, Mr. Viehman continued to receive payments on behalf of his daughter, which he deposited into her savings account and disbursed to her according to her needs.

More than four years later, by a letter dated October 16, 1978, the Social Security Administration advised Mr. Viehman of a problem in the continued receipt of payments for Katherine due to her marriage and requested that he come in to discuss the matter. Record, vol. II, at 71. On October 19, 1978, within three days of the *date* of the letter, Mr. Viehman visited the Social Security Office.

At that time, he openly discussed his previous conversation with the social security representative concerning Katherine's marriage. He told Ms. Riley, the Social Securi-

1. Katherine E. Viehman had been adjudicated incompetent. Doctors had diagnosed her condition as "encephalopathy associated with prematurity and depressive neurosis." Appellee's Brief at 5.

2. Although the overpayment is not disputed, we are concerned that the period of overpay-

ment encompasses a period from May, 1974, through October, 1978. If the marriage stands as the determining factor in Katherine's eligibility for disability benefits, the subsequent divorce in January, 1976, should have eliminated the ineligibility factor.

ty Administration representative, that "he didn't know how he could repay the money. just [sic] hoped Ronald was due SSA back then." Social Security Administration's Report of Contact, Record, vol. II, at 77. As Ms. Riley noted in her report, Mr. Viehman "didn't try to talk his way out of the situation—was friendly thru whole interview." Id.[3]

Notwithstanding his explanation of the events which had taken place, Mr. Viehman received a second letter from the Administration, dated November 27, 1978, informing him of an overpayment in excess of $7,000 and that *his* benefits would be terminated to make up for the amount of the overpayment. Mr. Viehman retained counsel who requested a "preadjustment review and/or waiver pursuant to 42 U.S.C.A. § 404(b)." Record, vol. II, at 50.

By letter, dated July 18, 1979, the Social Security Administration advised Mr. Viehman of its denial of his request for a waiver. The "Special Determination" report which accompanied the letter stated:

> Waiver is not applicable because without fault has not been established. William says he notified the social security office when his daughter was married and was told that the marriage did not affect his daughter's benefits since his daughter was retarded and since she married a retarded boy. Our records show when William applied for disability benefits for Katherine, he agreed to report any event which would affect payment of her benefits and to return any check to which she was not entitled. Upon thorough investigation of William's statement that he did report Katherine's marriage, and was told her marriage would not affect her benefits *he could not submit sufficient proof to substantiate his allegation.* Under the circumstances, waiver of

recovery of the overpayment is not applicable.

Record, vol. II, at 55 (emphasis supplied).

Mr. Viehman requested reconsideration. The Administration found the original decision to be "correct and in accordance with the law and regulations." In its Reconsideration Determination, the Administration stated that "[w]aiver was denied because without fault could not be established.... Sufficient proof has not been submitted to substantiate his allegation. Also, Mr. Viehman did not follow through and determine if the boy his daughter was marrying was receiving benefits." Record, vol. II, at 58–59.

Subsequently, Mr. Viehman requested a hearing. The evidence consisted of several documents pertaining to his daughter's marriage and divorce, statements obtained by the Administration, and testimony from Mr. Viehman. He testified that he was 70 years old, had a tenth grade education, and that he had worked in the construction industry most of his life. He then proceeded to explain the facts surrounding his daughter's marriage and his telephone report of it to the Social Security Administration.

Based on the record, the ALJ found that "Mr. Viehman failed to timely report his daughter's marriage to the Social Security Administration." Record, vol. II, at 11. The Appeals Council refused to review the case and adopted the ALJ's ruling as final. In considering Mr. Viehman's petition for review of the administrative decision, the federal magistrate deciphered the ALJ's ruling to mean that insufficient proof had been offered to support Mr. Viehman's claim that he did, in fact, report his daughter's marriage and he had therefore failed to prove he was "without fault." The magistrate found that the ALJ had determined the testimony was "not credible proof of the required notification." He concluded the record contained substantial evidence to support the Secretary's final decision.[4] The

---

3. During his visit he made a statement espousing the same factual details of his conversation with the Social Security Administration as he testified to during the hearing.

4. If, in fact, the ALJ based his decision on insufficient evidence, it seems incongruous that the requisite standard of review would require us to find *substantial* evidence to support a finding of *insufficient* evidence to establish a *negative*—"without fault."

District Court adopted the magistrate's report and recommendation.

*With or Without Fault—That is the Question*

■ Substantial evidence sets the parameters for our review of the Secretary's adverse final determination in this case.[5] *Watkins v. Schweiker*, 667 F.2d 954 (11th Cir. 1982). Satisfaction of this test requires "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938). While the limited scope of our review prohibits substitution of our own evaluation of the evidence for that of the Secretary's, we are not restricted from scrutinizing the record to determine if substantial evidence exists to support the Secretary's findings. *Millet v. Schweiker*, 662 F.2d 1199, 1201 (5th Cir. 1981). In the absence of an affirmative determination in this regard, it is our duty to reverse and remand. *Rini v. Harris*, 615 F.2d 625 (5th Cir. 1980).

There is no dispute as to the underlying problem that an overpayment has occurred.[6] Nor do the parties disagree on the relevant statutes and regulations. The conflict arises from the ALJ's ruling that Mr. Viehman was not "without fault," and thus not entitled to a waiver of the overpayment.

Section 204(b) of the Social Security Act provides for a waiver of an overpayment of benefits for "any person who is *without fault* if such adjustment or recovery would defeat the purpose of this title or be against equity and good conscience." 42 U.S.C. § 404(b) (1976) (emphasis supplied). The burden is upon the claimant to establish the negative prerequisite ("without fault"), before the Secretary considers the second tier of the waiver statute. *Kendrick v. Califano*, 460 F.Supp. 561 (E.D.Va.1978). In this case, an adverse finding of the "without fault" requirement terminated the ALJ's consideration before reaching the second tier of the waiver statute. The government argues that Mr. Viehman failed to furnish the Administration with information he knew or should have known was material to continued receipt of his daughter's benefits since Mr. Viehman was unable to provide documentary evidence to substantiate his story of reporting his daughter's marriage to the Administration.[7]

We have reviewed the record. We have read the preliminary determinations of the Administration, the findings and conclusions of the ALJ, and the magistrate's recommendation. In each instance we have been unable to discern whether the trier of fact based his findings and conclusion on the quantitative scope of Mr. Viehman's evidence, limited to his own testimony, *or* chose to disbelieve Mr. Viehman.

■ Credibility determinations lie solely within the province of the trier of fact. *Id.* at 574. This long-standing evidentiary

---

**5.** 42 U.S.C. § 405(g) (1976) provides in pertinent part: "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...."

**6.** (b) The last month for which a child is entitled to a child's insurance benefit is the month before the month in which any one of the following events first occurs:

> ....
>
> (2) The child marries (except as provided in paragraph (d) of this section):
>
> ....
>
> (d) The marriage of a child, age 18 or over and entitled to child's insurance benefits based on disability, will not terminate such entitlement (however, see paragraph (c) of this section for termination because of a subsequent event) if the marriage is to:

> (1) A person age 18 or older entitled to child's insurance benefits based on a disability....

20 C.F.R. § 404.321, *quoted in* Brief for Appellee, at 7–8.

**7.** "Fault" has been defined as:

> (a) An incorrect statement made by the individual which he knew or should have known to be incorrect; or
>
> (b) Failure to furnish information which he knew or should have known to be material; or
>
> (c) With respect to the overpaid individual only, acceptance of a payment which he either knew or could have been expected to know was incorrect.

20 C.F.R. 404.507.

rule retains its validity because of the unique position occupied by the fact finder and his ability to view first-hand the demeanor of the witness. If, in fact, the ALJ chose not to believe Mr. Viehman, the record would be devoid of sufficient evidence to prove he was "without fault" as required by the statute. On the other hand, if the ALJ chose to believe his testimony, it alone *is* sufficient to meet the burden of proof imposed upon him.

> [A]n examiner's findings should be as comprehensive and analytical as feasible and, where appropriate, should include a statement of subordinate factual foundations on which ultimate factual conclusions are based, so that a reviewing court may know the basis for the decision.

*Baerga v. Richardson*, 500 F.2d 309, 312 (3d Cir. 1974), *cert. denied*, 420 U.S. 931, 95 S.Ct. 1133, 43 L.Ed.2d 403 (1975). The circuit courts have expanded this rule to encompass credibility determinations "whenever the claimant's credibility is a critical factor in the Secretary's decision." *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981).

"Critical" aptly describes Mr. Viehman's testimony. It was critical because it explained away any suspicion of wrongdoing or "fault," thereby entitling him to a waiver. It became even more critical by the absence of any other supporting evidence with which he could establish his claim.

8. The Code of Federal Regulations lists circumstances under which a recipient is considered "without fault" in accepting benefits. These circumstances include:

    (b) Reliance upon erroneous information from an official source within the Social Security Administration ... with respect to the interpretation of a pertinent provision of the Social Security Act or regulations pertaining thereto....

    ....

    (g) The continued issuance of benefit checks to him after he sent notice to the Administration of the event which caused or should have caused the deductions provided that such continued issuance of checks led him to believe in good faith that he was entitled to checks subsequently received.

In view of these circumstances, it is necessary to our review that the fact finder articulate "any reasons for questioning [Mr. Viehman's] credibility...." *Id.* The findings at each level in this case are ambiguous at best. The Administration's Special Determination stated that Mr. Viehman "could not submit sufficient proof to substantiate his allegation." Record, vol. II, at 55. But, there is no indication if this is based on disbelief of his story or that the Administration wanted *more* proof.

In its reconsideration, the Administration reiterated its original statement and then added that Mr. Viehman had not followed through to determine if his son-in-law was receiving payments. This tends to indicate that it was not disbelief in his story, but rather that the Administration required more. The ALJ found that Mr. Viehman failed to timely report his daughter's marriage. Once again, the conclusion left open the question of credibility.

We are cognizant of the burdensome work load which confronts the Social Security Administration. And so we do not lightly impose upon the fact finder a more stringent requirement to articulate with greater detail its reasons for disbelieving a claimant. "However, if the claimant could have prevailed if all of the claimant's evidence had been believed, the trier of fact has a duty to pass on the issue of the truth and reliability of [his claim]...." *Scharlow v. Schweiker*, 655 F.2d 645, 648 (5th Cir. 1981).[8]

20 C.F.R. § 404.510. In addition, 20 C.F.R. § 404.510a provides:

> Where an individual or other person on behalf of an individual accepts such overpayment because of reliance on erroneous information from an official source within the Social Security Administration ... with respect to the interpretation of a pertinent provision of the Social Security Act or regulations pertaining thereto ... such individual, in accepting such overpayment, will be deemed to be "without fault."

The appellant contends Mr. Viehman clearly fits within the circumstances outlined in 20 C.F.R. § 404.510a. The record, as it stands before us, could certainly support the application of this section to Mr. Viehman's case. However, the limited scope of review afforded us precludes substitution of our judgment for that of the fact finder's, "even if the reviewing

■ Since we are unable to decipher whether the ALJ based his ruling on a credibility determination, and because that determination is critical to Mr. Viehman's claim [9] and our review for substantial evidence, we find it necessary to remand this case. We leave to the sound discretion of the Secretary the question of whether the evidence can be supplemented without an additional hearing or whether the remand necessitates a new hearing on this matter. REVERSED and REMANDED for proceedings consistent with this opinion.[10]

court finds the evidence preponderates toward a wholly different finding." *Oldham v. Schweiker,* 660 F.2d 1078, 1083 (5th Cir. 1981).

9. If the ALJ believes Mr. Viehman called the Social Security office and had the conversation he testified about, the conclusions that "Mr. Viehman failed to timely report his daughter's marriage" and did "not submit sufficient proof to substantiate his allegation" are clearly erroneous as a matter of law.

10. If *on remand the ALJ finds* Mr. Viehman "without fault," it will then be necessary to apply the second tier of the waiver provision. Under this second tier, the ALJ is called upon to determine whether repayment would "defeat the purpose" of the Social Security Act or would be "against equity and good conscience." 42 U.S.C. § 404(b) (1976). The regulations state that the purpose of the Act would be defeated if overpayment places the individual in financial need in order to meet his current living expenses. Mr. Viehman's age, occupation, and sources of income provide relevant factors for consideration of his needs to retain "substantially all of his current income (including social security monthly benefits) to meet current ordinary and necessary living expenses." 20 C.F.R. § 404.508(b); *Cucuzzella v. Weinberger,* 395 F.Supp. 1288 (D.Del.1975). As noted earlier, his payments appear to have been terminated in order to initiate repayment of the benefits.