Carl N. GORR, Plaintiff-Appellant,

v.

Margaret M. HECKLER, Secretary of Health and Human Services, Defendant-Appellee.

No. 84–3226

Non-Argument Calendar.

United States Court of Appeals, Eleventh Circuit.

Dec. 5, 1984.

Carl N. Gorr, pro se.

Virginia Covington, Asst. U.S. Atty., Tampa, Fla., for defendant-appellee.

Before GODBOLD, Chief Judge, and KRAVITCH and HATCHETT, Circuit Judges.

PER CURIAM:

The ALJ found that petitioner suffered a severe impairment arising from his feet but that he was not disabled. The Appeals Council denied review, and the district court affirmed, stating only that the decision was supported by substantial evidence. We reverse with directions to remand to the Secretary.

The relevant findings of the ALJ concerning disability are:

Claimant has the following severe impairment: fragmentation of Silastic implants in the great toes of both feet and fracture of the lateral cortex of the proximal phalanx on the right great toe, causing pain upon walking.

The claimant's assertion that the aforesaid severe impairment coupled with other alleged impairments not found to be severe, prevents him from engaging in any work activities is found not to be credible.

Claimant has the residual functional capacity to perform work-related functions except for work which would require claimant to walk or stand continuously on an eight hour a day basis.

The claimant's past relevant work as president of a plastering subcontracting firm did not require claimant to be on his feet continuously and to walk or stand on an eight hour a day basis.

The claimant's impairment does not prevent him from engaging in the performance of his past relevant work.

The claimant was not under a "disability" as defined in the Social Security Act, at any time through the date of this decision.

Before claimant encountered the severe impairment arising from his feet he engaged in work as president of a plastering sub-contracting firm with 18–25 employees. Asked to describe his job duties claimant testified:

I was a pusher was what I was. I got to work first thing in the morning, I got all the tools and everything for the men so that they's be able to work, saw that the mud was ready, plaster was ready when they got on the job, assigned to their proper places to work, order material, keep tim [sic], help build scaffolds, mix plaster and in general run the whole job.

He also described himself as the boss of the crew. He was asked to describe what he did in a physical and exertional sense. He responded:

A. Physically I had to be on my feet all day long. Going from floor to floor, most of the buildings were between six and twelve story buildings. I had to go up and down steps all day long. Assign men, troubleshoot. Physically I had to work, there was no office on the job or anything like that.

.    .    .    .    .

A. Plaster walls and ceilings, build scaffolds, roll wheelbarrows full of cement, etc. General construction.

Q. What would be the heaviest object that you'd have to lift in connection with this job?

A. A hundred to a hundred and twenty-five pounds.

Q. How frequently would you have to do that?

A. Oh probably five or six times a day.

Q. What other kinds of objects would you lift and how much did they weigh?

A. Sheet rock approximately fifty to sixty pounds per sheet. Wheelbarrows full of cement. I don't know how much they weigh, I really don't have any idea how much that weighs wet. Generally applying plaster the weight would be somewhere around forty pounds that you continuously lift all day long. Just go to the mortar board back and forth, puttin [sic] it on the walls.

He testified also that he prepared bids and bid jobs. He had a secretary and an office but described the percentage of time he spent in the office as follows:

Day time, never, very, very seldom, usually at night I'd go in and take care of paper work a couple of hours a night, most of the time.

Petitioner was asked to explain his duties after he had an operation on his feet, and he responded as follows:

A. Well after the operation on my feet I wasn't able to get out, I was in bed for seven months and I had to try to run the job from my telephone in bed, I hired a fellow from Georgia to come down and help me out and he didn't last too long. And I consequently just had to stop. I finished up the contracts that we were on and I had to stop taking any work.

Q. Okay now I'm still a little bit unclear, why was it that you were unable to continue operating the job from a telephone, from a desk type of—

A. Well things that I had been doing personally, in order to make the business pay, I didn't have any salesmen or I didn't have any takeoff men or I didn't have, there was nobody but me to run the business and do the work and see that it got done. And I wasn't able to do that after my operation.

The ALJ's determination that Gorr's severe impairment is not disabling rests on subsidiary findings that the impairment did not prevent Gorr from doing his past work, which, the ALJ found, did not require him to be on his feet continuously and to stand and walk on an eight hour a day basis. There is no substantial evidence to support these subsidiary findings.

Claimant described his own physical and exertional activities, and the time and nature of his supervisory and desk work, before his impairment began. No evidence refuted his testimony. But, contrary to this testimony, the ALJ found that Gorr's past work activities were "in fact divided primarily between supervisory activities and desk work." He found that while Gorr engaged in a substantial amount of on-site inspection and supervision he also undoubtedly engaged in a substantial amount of desk activities that were primarily sedentary in character. He concluded that claim-

ant's work essentially was a mixture of light and sedentary work in which he functioned more in an executive capacity than as an active plasterer. No substantial evidence supports these findings.

■ The ALJ found that claimant's description of his [pre-impairment] work activities was not credible. The ALJ must articulate a reason for questioning credibility. *Viehman v. Schweiker*, 679 F.2d 223, 228 (11th Cir.1982). The closest to a reason given in this instance is that the ALJ disbelieved Gorr's testimony, quoted above, describing the conduct of his business *after* he became impaired and had surgery on his feet.

> The Administrative Law Judge does not accept as credible claimant's assertion that he earned these [substantial] revenues simply while lying in bed and handling the remnants of his business over the telephone.

Neither the evidence nor common sense nor business experience justifies the ALJ in concluding that, because Gorr's business brought in substantial revenues during the time after he became impaired he was not telling the truth about the manner in which the business operated during such time— i.e., rather than being in bed and running it by telephone during this "winding down" period Gorr necessarily must have been up and on the job running it himself.[1]

Even if an appropriate reason had been assigned for disbelieving the testimony concerning after-impairment work, that testimony bore no direct relation to the physical and exertional aspects of pre-impairment work. The most that this rejection of credibility could have done, if appropriately made, would have been to tend to show general lack of credibility, that is, Gorr was not credible about B so he must not have been credible about A. Even if this inference were permissible and were drawn, there is no evidence to support the ALJ's conclusions describing claimant's pre-impairment work as "divided primarily between supervisory activities and desk

work" and "a mixture of light and sedentary work in which he functioned more in an executive capacity than as an active plasterer." In the absence of accepting Gorr's description of what he did, nothing supports the ALJ's re-characterization of what Gorr did.

With respect to claimant's present condition, the ALJ found he is capable of a significant amount of walking in connection with his maintenance of commercial property that he owns. Gorr testified that weekly he visits a warehouse that he rents out to inspect the premises and at times to collect the rent. The ALJ inferred from this that Gorr is capable of a significant amount of walking in connection with this commercial property. No evidence supports this conclusion. Gorr visits the warehouse weekly, but whether he must get about afoot while he is there, and what he does, are not in evidence. There is evidence that Gorr drives his car at times, but this is not shown to relate to whether he can stand or walk, nor to whether he walks about the warehouse.

REVERSED and REMANDED with instructions to remand to the Secretary.

---

1. The ALJ made no reference to claimant's testimony that he hired someone to help him but that it didn't work out, and that he then completed his contracts and stopped taking work.