**Lois JEFFERSON, Plaintiff-Appellant,**

v.

**Otis R. BOWEN, Secretary of Health and Human Services, Defendant-Appellee.**

**No. 85–8927.**

United States Court of Appeals, Eleventh Circuit.

July 23, 1986.

are otherwise ready for appeal. *Wetzel,* 424

Gary Flack, Atlanta, Ga., for plaintiff-appellant.

Amy D. Levin, Asst. U.S. Atty., Atlanta, Ga., for defendant-appellee.

Before KRAVITCH and HATCHETT, Circuit Judges, and TUTTLE, Senior Circuit Judge.

U.S. at 742–43, 96 S.Ct. at 1206.

Amended Opinion

KRAVITCH, Circuit Judge:

The Social Security Administration (SSA) overpaid benefits to Lois Jefferson from 1978 through 1982. Jefferson concedes that the SSA overpaid her, but requests that it waive repayment, pursuant to 42 U.S.C. § 404(b)[1] because she was not at fault. The district court adopted a magistrate's recommendation affirming the SSA decision not to waive repayment. We reverse and remand with instructions to enter judgment for Mrs. Jefferson.

## I. BACKGROUND

In 1972, Jefferson's husband applied for retirement and disability benefits and she signed an application form that entitled her to $12.60 per month for wife's insurance benefits. Mrs. Jefferson testified that her husband brought the form home from the Social Security office and told her that the SSA requested that she sign it. She testified that she neither read nor filled out the application because she thought it concerned her husband. Her application form indicated that she was earning about $3,400 per year and her award certificate, which was issued shortly thereafter, stated she would receive a monthly benefit of $12.60 even though her taxable earnings "would ordinarily require that no benefits be paid." The award certificate also directed Jefferson to notify the SSA if her earnings became "substantially more or less than [she] expected." In her application, Jefferson agreed to report her annual income; the award certificate, however, did not indicate that she was required to report her income annually. She received wife's insurance benefits from 1972 through 1978.

At a Social Security hearing, an Administrative Law Judge (ALJ) found Mrs. Jeffer-

son's testimony both credible and truthful. Her testimony established the following. On January 11, 1978, Mrs. Jefferson's husband died. Shortly thereafter she telephoned the SSA to report her husband's death and to inquire about her continued eligibility for benefits. Although she informed the SSA that she was still employed, an SSA official assured her that she would continue to receive benefits because she had a dependent child in her care. She was not advised that she was required to report her income and did not receive a form on which to report her income until 1982. The ALJ also determined that Jefferson's income did not affect her entitlement to a benefit award until after her husband's death.

In 1982, the SSA wrote to Jefferson informing her that, in light of her earnings, she had been overpaid benefits after 1978, but that she would continue to receive some benefits in her name for the use of her minor child. The SSA subsequently notified her that she had been overpaid a total of $5,851.80 for the years 1978–1982. Jefferson does not contest this amount. Instead she argued unsuccessfully before the ALJ and in the district court that overpayment should be waived because she was not at fault.

## II. ANALYSIS

The SSA may waive the repayment of funds it has incorrectly paid out if (a) the recipient was without fault and (b) repayment would either defeat the purpose of the Social Security Act or offend equity and good conscience. 42 U.S.C. § 404(b); 20 C.F.R. § 404.506.

---

1. The controlling statutory provisions as found in 42 U.S.C. §§ 404(a) and 404(b) provide in pertinent part:

    (a) . . .
    (1) With respect to payment to a person of more than the correct amount, the Secretary shall decrease any payment under this subchapter to which such overpaid person is entitled, or shall require such over paid person or his estate to refund the amount in excess of the correct amount. . . .

    (b) . . .
    In any case in which more than the correct amount of payment has been made, there shall be no adjustment of payments to, or recovery by the United States from, any person who is without fault if such adjustment or recovery would defeat the purpose of this subchapter or would be against equity and good conscience.

The determination of when a recipient is without fault is based on subjective criteria including the recipient's age, intelligence, education, and physical and mental condition. 20 C.F.R. § 404.507. "[T]he decision which must be reached in a fault determination is highly subjective, highly dependent on the interaction between the intentions and state of mind of the claimant and the peculiar circumstances of his situation." *Harrison v. Heckler*, 746 F.2d 480, 482 (9th Cir.1984); *see Rini v. Harris*, 615 F.2d 625, 627 (5th Cir.1980) (claimant's health, status as high school dropout and his reliance on SSA officials were circumstances that showed claimant was without fault).[2]

The ALJ held that Jefferson "failed to exercise the high standard of care required of benefit recipients in reporting pertinent information, and that she should have known that the level of her earnings was material to the amount of benefits she was receiving." [3] It thus appears that the ALJ erroneously held Jefferson to an objective standard rather than considering the subjective reasonableness of her actions. Reviewing Jefferson's actions in light of the subjective standard mandated by 20 C.F.R. § 404.507, we conclude that Jefferson was without fault. As in *Rini*, Jefferson had a limited education. The *Rini* plaintiff was a high school dropout, whereas Jefferson completed only the fourth grade and possessed minimal literacy. Mrs. Jefferson's testimony indicated that while she could read birthday and Christmas cards, she would have difficulty reading Social Security forms. Moreover, as in *Rini*, Jefferson relied in good faith on the SSA's expertise. *See Rini*, 615 F.2d at 627 (claimant who assumed, perhaps erroneously, that SSA "must know what they are doing" was without fault).

Jefferson's case is also similar to *Viehman v. Schweiker*, 679 F.2d 223 (11th Cir. 1982). There, this court concluded that a claimant's oral notification of a change of status coupled with SSA assurances that no further notification was necessary can establish that the claimant was without fault. Jefferson's case is more compelling than *Viehman*. Unlike *Viehman*, which was remanded to determine the claimant's credibility regarding his conversations with the SSA, the ALJ in the present case explicitly determined that Jefferson's testimony was credible and truthful and that she had not knowingly withheld information.

The government attempts to distinguish *Viehman* by noting that, according to Jefferson, the SSA never told her she did not have to file an annual income report. The magistrate's recommended decision followed this reasoning and found that Jefferson did not testify that the SSA told her she was "relieved of her responsibility to report annual income." The government's reading of *Viehman* would suggest that a recipient must show that he was affirmatively misled by the SSA in order to meet the "without fault" standard. We conclude that the government's gloss is an overly narrow view of *Viehman*. *Viehman* stands for the proposition that one may be without fault if one reasonably relies on the SSA. Resolution of this issue turns on the subjective reasonableness of the claimant's actions.

We conclude that both the ALJ and the district court erred by holding Jefferson to the standard of a reasonable benefit recipient. Viewed subjectively, Jefferson's actions establish that she was without fault. As in *Rini*, her ability to fathom SSA forms was limited. As in *Viehman*, she relied on the oral assurances of the SSA. More importantly, she made a substantial effort to comply with SSA requirements by promptly notifying the Administration of her husband's death and her continuing

---

**2.** The Eleventh Circuit, in the en banc decision *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

**3.** We note that this is not a case where we determine whether the ALJ's decision was supported by substantial evidence. The historical facts of this case are not in dispute; the heart of this controversy is whether the ALJ erred by applying the wrong legal standard.

employment. The only notice she had regarding the filing of annual income reports was in the 1972 application. In that application a box was checked indicating that she agreed to file reports when required. Her award certificate, however, indicated that she would receive nominal benefits notwithstanding her employment.[4] It is simply unreasonable, therefore, to expect that Mrs. Jefferson would recall a check mark in a box from a form filled out in 1972 and, because of that recollection, discount assurances she received from the SSA several days after her husband's funeral. In short, Jefferson did everything she could be expected to do to comply with SSA regulations.

The government argues that because Jefferson had *some* ability to read, she was on notice when she signed her benefits application in 1972 that she had to report her income. The government further argues that she cannot claim that she was without fault because she failed to read the application. We reject the government's position because the notice provisions of the 1972 application had no bearing on whether she was without fault in not reporting her income after her husband died. The ALJ determined that her income prior to Mr. Jefferson's death was not a factor in her award. Although her benefit status changed as of her husband's death and her income became relevant, the SSA did not inform her of this change until 1982 even though she alerted the SSA of her changed status in 1978. When one views Mrs. Jefferson's actions under the standard of the reasonable widow with limited literacy who was assured by the SSA that she would continue to receive benefits, her actions establish that she was without fault.

■ In the instant case, the district court concluded that the ALJ correctly determined that Jefferson was not without fault. Accordingly, the district court did not reach the equitable arguments that comprise the second prong of the section 404(b) analysis. On appeal, Jefferson has incorporated by reference her principal brief in district court addressing the second prong of the section 404(b) analysis. Although we could remand to the district court for a balancing of equities, such a balance entails a conclusion of law we are able to make based on the record. As in *Rini*, we conclude that "this case has gone far enough." 615 F.2d at 627 (declining to remand and resolving equitable considerations).

The record indicates that between 1978 and 1982 Jefferson earned approximately $7,000 per year. Moreover, her overpayment recovery questionaire indicates that she does not have the funds to repay the SSA.[5] Upon consideration of Jefferson's limited financial resources and her blamelessness in causing her overpayment, we conclude that repayment in this case would offend equity. Accordingly, we REVERSE and REMAND with instructions to enter judgment for Jefferson.

---

**4.** Preprinted on the award certificate was a notice directing the recipient's attention to a booklet mailed with the certificate. The notice indicates that the booklet sets out a recipient's responsibilities. Given Jefferson's literacy, it is uncertain whether she could have read the booklet. Given the amount and nature of her award, we are inclined to conclude that it would have been subjectively reasonable for Jefferson to believe it pertained to her husband's award and did not affect her. These considerations are immaterial, however: the booklet is not part of the record.

**5.** The questionnaire, filled out in 1982, indicates that Jefferson had monthly expenses of $1,036.92, a monthly income of $1,024 and savings of $688. This questionnaire was updated in December, 1983 and showed that Jefferson's income and savings had decreased.