885 F.2d 864
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Bobbie H. BONEY, Plaintiff-Appellant,
v.
Otis R. BOWEN, Secretary of Health & Human Services,
Defendant-Appellee.
 No. 88-3201.
 United States Court of Appeals, Fourth Circuit.
 Submitted May 8, 1989.
Decided Sept. 14, 1989.
 
 James B. Gillespie, Jr. for appellant.
 Margaret Person Currin, United States Attorney, Paul M. Newbry, Assistant United States Attorney, Eastern District of North Carolina, for appellee.
 Before SPROUSE, Circuit Judge, THOMAS SELBY ELLIS, III, United States District Judge for the Eastern District of Virginia, sitting by designation, and JOHN A. MacKENZIE, Senior District Judge for the Eastern District of Virginia, sitting by designation.
 PER CURIAM:
 
 
 1
 This is an appeal from the denial of attorney's fees claimed under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. Sec. 2412(d). From 1975 to 1982 the Social Security Administration ("SSA") erroneously paid appellant certain "mother's benefits" pursuant to 20 C.F.R. Sec. 404.339 which she concedes she was not entitled to receive.[1] When the Secretary of Health and Human Services ("Secretary") sought repayment, appellant requested a waiver pursuant to 42 U.S.C. Sec. 404(b) on the ground that she was not "at fault" for the erroneous payments.[2] After two remands, she prevailed. The district court, adopting a magistrate's report, ruled that there was no evidence to support the Secretary's position that appellant was at fault. Thereafter, appellant sought fees under the EAJA on the ground that the Secretary's position was not substantially justified. See 28 U.S.C. Sec. 2412(d)(1)(A); see also Pierce v. Underwood, --- U.S. ----, 108 S.Ct. 2541, 2550 (1988). The district court denied this claim, noting little more than the "at fault" determination is typically one that is "highly subjective" and "highly dependent" on the claimant's intentions and state of mind. Because the district court's denial of attorney's fees appears inconsistent with its ruling on the "at fault" issue and because its explanation does not address this apparent inconsistency, we remand to give the district court an opportunity to reconsider the denial of fees or, alternatively, to articulate more fully its reasons for denying fees in this case.
 
 I[3]
 
 2
 Appellant is a sixty-year-old widow and college graduate with four children. She has worked both as a high school science teacher and as manager of a motel.
 
 
 3
 In late 1970, appellant's husband, the wage earner in this case, was released from Cherry Hospital in Goldsboro, North Carolina where he had been involuntarily committed for recurrent severe depression. Soon after his release in early 1971, appellant's husband filed for benefits with the SSA. Among the forms appellant's husband completed was an application for wife's benefits, benefits awarded to mothers of dependent children whose annual income fall below a set figure. 20 C.F.R. Sec. 404.330. This form stated that upon an award of wife's benefits, the recipient would be required to file annual earnings reports. All forms were returned to the SSA district office in Wilmington, North Carolina. Upon review, SSA denied the husband's requests for various disability benefits. Despondent over this, the husband committed suicide.
 
 
 4
 Following her husband's suicide in 1971, appellant, with the help of a friend, again filed for social security benefits. After obtaining information from her over the phone, SSA personnel mailed appellant a number of completed application forms for her signature, including an application for mother's benefits. As with the application for wife's benefits, this application stated that a recipient of mother's benefits would be required to file an annual earnings report. Appellant also contemporaneously submitted documentation of her salary. Following review, SSA determined that appellant's children were eligible for benefits, but appellant remained ineligible for mother's benefits because her income was too great.
 
 
 5
 Following this determination, certain of appellant's children began receiving benefit checks in their own names. One check, however, was sent to appellant in her name. Surprised by this, appellant called SSA and informed them that she was not entitled to any benefits. In response, she received an SSA letter informing her that although the check was in her name, it was not for her benefit. Rather, to reduce administrative expenses, SSA had sent a check in appellant's name to be used for the benefit of all of her children under the age of sixteen. The letter went on to explain that when a child reached sixteen, that child would begin receiving checks in his or her own name. Accordingly, appellant thereafter notified SSA as each of her children reached the age of sixteen. In the years that followed, seventeen changes took place in the amount of benefits paid or the number of checks received by appellant and her family.
 
 
 6
 In 1972, 1973 and 1974, SSA mailed earnings reporting forms to all potential and actual recipients of social security benefits. Upon receiving the forms, appellant completed and returned them. In 1975, for reasons never disclosed, SSA ceased sending these earnings reporting forms to actual and potential benefit recipients. Once appellant ceased receiving these forms, she stopped submitting a statement of her annual income to SSA.[4]
 
 
 7
 At this point SSA made the serious clerical errors that spawned this unfortunate dispute. Because appellant was no longer receiving and filing earnings reports, SSA erroneously concluded that she had no earnings. Based on her 1971 application, therefore, SSA awarded appellant mother's benefits even though her income made her ineligible for these benefits. Compounding its error, SSA did not inform appellant that she was now receiving mother's benefits. Rather, SSA simply increased the amount of money included in the check appellant already received for her children. Appellant was, therefore, understandably unaware that she was receiving mother's benefits. Thus, from 1975 to 1982 appellant neither received nor submitted any annual income statement forms. Yet, without her knowledge, she received mother's benefits for which she was ineligible.
 
 
 8
 In 1982, this situation changed. In that year, SSA mailed appellant forms on which she was to report her annual income for the years 1978, 1979, 1980 and 1981. Appellant completed and returned these forms. Upon review of appellant's income statement forms, SSA discovered its error in awarding appellant mother's benefits. It notified appellant that she had been overpaid $9,937.60, an amount approximately equal to her annual income. The Secretary sought recovery of this overpayment. While conceding she was ineligible for mother's benefits, appellant argued that she was not "at fault" in receiving these benefits and was financially incapable of repaying the overpayment. Therefore, according to appellant, under applicable regulations, 42 U.S.C. Sec. 404(b) and 20 C.F.R. Sec. 404.501 et seq., she was entitled to a waiver of the repayment. Following a hearing on September 28, 1983 at which appellant appeared pro se, an Administrative Law Judge ("ALJ") denied appellant's waiver request, finding that she did not meet the "without fault" requirements of the regulatory scheme. Appellant then obtained the pro bono services of her current counsel. He sought review of the ALJ's decision by the SSA Appeals Council. The Appeals Council affirmed the ALJ's decision.
 
 
 9
 Appellant appealed this decision to the district court, which reversed SSA's decision and remanded. Judge Dupree found genuine questions remaining as to (1) whether appellant knew that she was required to file timely earnings statements; (2) whether appellant applied for mother's benefits; and (3) whether appellant could be at fault for not submitting income statement forms when the Secretary had failed to send her the income statement forms and appellant had returned every form that had been sent to her. In conclusion, Judge Dupree directed the Secretary to provide appellant with an opportunity to show that her failure to submit earnings statements for the years 1978 through 1982 was not her fault. He also directed the Secretary to add a number of missing documents to the administrative record.
 
 
 10
 Upon remand, SSA inexplicably chose not to hold a hearing at which appellant would be given an opportunity to testify as to why she was not at fault. Rather, the Appeals Council simply "sent a letter to [appellant's] attorney in which it informed him that it proposed to issue a new decision deciding that the claimant was not without fault in causing the overpayment of benefits ... and that such overpayment could not be waived." Feb. 21, 1986 Decision of Appeals Council at 1. The Appeals Council also proposed to add certain documents to the administrative record supporting the ALJ's conclusion. Appellant's attorney was informed that if he had "any further evidence to submit or arguments to make" he should mail them to the council. Id. at 2. In effect, the Appeals Council decided to adhere to its prior decision without reconsidering whether appellant was at fault as the district court had directed.
 
 
 11
 Not surprisingly, appellant's counsel objected to the procedure followed by the Appeals Council, arguing that appellant was not given her court-ordered opportunity to support her position that she was not at fault. This objection was supported by appellant's affidavit setting forth her position. The Appeals Council was unmoved; it concluded that appellant was at fault because she "failed to furnish earnings information which she should have known to be material." Id. at 3. The Appeals Council also concluded that it had complied with Judge Dupree's order because it had produced evidence of appellant's application for mother's insurance benefits and annual earnings reports from 1972 and 1973, had proffered these to appellant's attorney and had given appellant's counsel "ample opportunity to submit further evidence and/or argument in rebuttal." Id. at 4.
 
 
 12
 Appellant again appealed to the district court. Again Judge Dupree remanded the action "for a hearing due to the Secretary's failure to adequately give plaintiff the opportunity to present her case." July 8, 1986 Order at 3. Judge Dupree also acknowledged that he did not specifically order SSA to conduct a new hearing, but stated that such a hearing was plainly contemplated as necessary to hear further testimony on why appellant failed to file earnings statements from 1978 to 1981. As he put it,
 
 
 13
 [s]pecifically, the question of whether [appellant] received the forms in the relevant years from the Secretary seemed particularly pertinent. As the Court stated [in its previous order], "if the Secretary's policy is to send claimants these forms yearly, then plaintiff cannot necessarily [be] said to be at fault if she did not receive these forms until 1982." This question was not addressed by the Appeals Council's decision, and is particularly one which would require live testimony to resolve.
 
 
 14
 July 8, 1988 Order at 3. Judge Dupree directed the Secretary to hold a new hearing at which appellant could present all evidence she believed supported her position that she was not at fault for the payment to her of mother's benefits.
 
 
 15
 On this second remand, a new hearing was held. Appellant presented her case. At the conclusion, the ALJ again recommended that appellant be required to repay the mother's benefits she had received. The Appeals Council adopted the ALJ's decision and appellant once more sought relief in the district court. While this matter was pending in the district court, SSA sent appellant a demand letter threatening to file a collection action within ten days if she did not repay the mother's benefits at once. Appellant moved to block the collection action until her appeal was decided. The Secretary responded, and the entire matter was sent to the magistrate for review. Thereafter, the magistrate issued his report in which he concluded that the "evidence overwhelmingly indicates that [appellant] was without fault in receiving and accepting overpayment and that recovery of the same is required to be waived." Magistrate's Memorandum and Recommendation at 1. Moreover, the magistrate found meritless all of the reasons given by the ALJ finding appellant at fault in receiving mother's benefits. On the contrary, the magistrate concluded that SSA's administrative errors and failings in processing appellant's file were the crux of the problem. Magistrate's Memorandum and Recommendation at 6-10.
 
 
 16
 Judge Dupree adopted this conclusion. Specifically, Judge Dupree stated that:
 
 
 17
 the Secretary's decision that [appellant] was "not without fault" when she accepted the benefits incorrectly sent to her is not supported by substantial evidence. The court agrees with the magistrate's conclusion that the evidence overwhelmingly indicates that [appellant] was without fault in receiving and accepting the overpayment and that recovery of the same is required to be waived ...
 
 
 18
 April 12, 1988 Order at 1-2. The Secretary chose not to appeal this ruling.
 
 
 19
 Appellant's counsel subsequently filed a Motion for Award of Attorney's Fees under the EAJA. Judge Dupree denied the motion. Relying on the highly subjective nature of the determination that a claimant is at fault, Judge Dupree found the position taken by the Secretary throughout the case to be substantially justified. Oct. 5, 1988 Order at 1-2. This appeal followed.
 
 II
 
 20
 The EAJA was enacted in response to Congress's concern that "persons 'may be deterred from seeking review of, or defending against, unreasonable governmental action because of the expenses involved in securing vindication of their rights.' " Sullivan v. Hudson, --- U.S. ----, 109 S.Ct. 2248, 2253 (1989) (quoting 94 Stat. 2325). It provides, in pertinent part, that:
 
 
 21
 a Court shall award to a prevailing party other than the United States fees and other expenses ... incurred by that party in any civil action ... brought by or against the United States ... unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.
 
 
 22
 28 U.S.C. Sec. 2412(d)(1)(A). Because the EAJA states that attorney's fees shall be awarded as of right to parties who prevail against the United States, the burden rests with the Secretary to demonstrate that his position had a reasonable basis in both law and fact. Pierce v. Underwood, --- U.S. ----, 108 S.Ct. 2541, 2550 (1988); Lively v. Bowen, 858 F.2d 177, 179-80 (4th Cir.1988). The Secretary's position is substantially justified if it is "justified to a degree that could satisfy a reasonable person." Pierce, 108 S.Ct. at 2550.
 
 
 23
 The district court's denial of EAJA benefits is reviewed under an abuse of discretion standard. Lively, 858 F.2d at 180. Under this standard, the district court's "decision deserves substantial deference." Piper Aircraft Co. v. Reyno, 454 U.S. 235, 257 (1985). This Court does not lightly reverse a district court's finding that EAJA attorney's fees are unwarranted. However, it has not hesitated to do so in appropriate circumstances. See Lively v. Bowen, 858 F.2d at 179 (EAJA fees awarded when no evidence supported district court's finding that Secretary was substantially justified); Rhoten v. Bowen, 854 F.2d 667, 668 (4th Cir.1988) (EAJA fees awarded because plaintiff was prevailing party); see also Sullivan v. Hudson, --- U.S. ----, 109 S.Ct. 2248 (1989) (affirming Eleventh Circuit's reversal of district court's denial of EAJA fees). For as the Supreme Court noted in Albermarle Paper Co. v. Moody, 422 U.S. 405, 416 (1975), simply because a decision calls for the exercise of discretionary choices by the district court "hardly means that it is unfettered by meaningful standards or shielded from thorough appellate review." With these legal principles as our lens, we turn next to an examination of the Secretary's argument and the district court's explanation.
 
 
 24
 The Secretary argues that the following findings of the ALJ substantially justified pursuing repayment of the mother's benefits:
 
 
 25
 1. Appellant is a very intelligent, highly educated individual with no physical or mental limitations. She is a college graduate, who taught science and handled the family finances.
 
 
 26
 2. Appellant filed an application for wife's and mother's benefits, although "she had initially maintained that she thought she was receiving benefits on behalf of her children and not herself." Appellee Brief at 10.
 
 
 27
 3. The application for wife's and mother's benefits required plaintiff to file annual reports of her income to receive these benefits, and she agreed to file them.
 
 
 28
 4. Appellant filed annual earnings reports from 1972-1974.
 
 
 29
 5. Appellant knew that her earnings affected the benefits received.
 
 
 30
 6. Appellant knew that her 1978-1981 benefits increased even though fewer of her children were eligible.
 
 
 31
 7. "Inasmuch as [appellant] had made annual reports in the past, and knew of the relationship of information to benefits, it was reasonable for the Secretary to hold her responsible for making annual reports for the years 1978 through 1981." Appellee Brief at 10.
 
 
 32
 Were these findings actually supported by the administrative record, the Secretary's position in this litigation might well have been substantially justified. As it happens, however, the magistrate concluded that most of these findings were entirely unsupported by any evidence. For example, as to the second finding's suggestion that appellant knew she was receiving mother's benefits, the magistrate found that "there is no evidence whatsoever to support [it]." Magistrate's Memorandum and Recommendation at 8. As to the fifth finding's statement that appellant knew that her earnings effected her benefits, the magistrate found that "[t]here is no indication that [appellant] had knowledge that her earnings were taken into account by [SSA] in determining the children's benefits. Furthermore, there is no evidence that she [was] aware that she was receiving benefits for her [own] benefit." Id. at 7. Similarly, the magistrate found the sixth finding's implication that the increase in the check she received put appellant on notice of her receiving mother's benefits to be unsupported by the record. He stated that "[appellant] felt that as children left home, her other children's benefits increased from the fund." Id. Finally, the seventh finding's conclusion is also baseless; the magistrate and the district court found that the appellant had no "knowledge that her earnings were taken into account ... in determining the children's benefits," nor was there "evidence that she [was] aware that she was receiving benefits for her own benefit." Id. at 7. At most, therefore, only the first, third and fourth of the ALJ's findings remain to support the Secretary's position. These findings--that appellant is intelligent and educated, that the application she signed in 1971 required annual income reports and that she filed none after 1974--might, in the absence of other facts, substantially justify an effort by the Secretary to seek repayment. Here, however, the inferences these facts permit are precluded by the following findings of the magistrate:
 
 
 33
 1. Appellant never knew that she was receiving mother's benefits. Magistrate's Memorandum and Recommendation at 8.
 
 
 34
 2. Appellant completed all forms that were sent to her by the SSA. Magistrate's Memorandum and Recommendation at 6.
 
 
 35
 3. Appellant failed to submit annual earnings reports after 1974 because the SSA stopped sending those forms to appellant and all other potential recipients. Magistrate's Memorandum and Recommendation at 8-9.
 
 
 36
 4. Appellant did not fail to report any material change in her financial status. Magistrate's Memorandum and Recommendation at 9.
 
 
 37
 5. After 1975, appellant had no reason to know that information regarding her earnings was important to the SSA. Magistrate's Memorandum and Recommendation at 10.
 
 
 38
 Given these findings, it is difficult to see any merit in the Secretary's claim that his repayment position was substantially justified. Conversely, it is easy to see why the magistrate and the district court concluded that "the evidence 'overwhelmingly indicates' that [appellant] was without fault in receiving and accepting the overpayment" and that the Secretary's position was "not supported by substantial evidence." April 12, 1988 Order at 1-2; Magistrate's Memorandum and Recommendation at 1. Those conclusions point persuasively, if not conclusively, to the award of attorney's fees. Against this background, we turn next to consider whether the district court's stated reasons for denying EAJA fees adequately explain its exercise of discretion.
 
 
 39
 The district court offered the following reason for denying fees:
 
 
 40
 The determination of whether a recipient of an overpayment is at fault "is highly subjective, highly dependent on the interaction between the intentions and state of mind of the claimant and the peculiar circumstances of his situation." Jefferson v. Bowen, 794 F.2d 631, 633 (11th Cir.1986) (quoting Harrison v. Heckler, 746 F.2d 480, 482 (9th Cir.1984)).
 
 
 41
 In this case the court finds the Secretary's position of seeking a repayment from plaintiff, and pursuing such a repayment when plaintiff appealed initial decisions favorable to the Secretary, was substantially justified. Accordingly, plaintiff's motion for attorney's fees is denied.
 
 
 42
 October 5, 1988 Order at 1-2. This explanation, in the circumstances, is inadequate. It does not address the specifics of the case. It does not explain: how the Secretary could be substantially justified in the face of "overwhelming evidence" that appellant was not at fault and did not even know she was receiving mother's benefits; how the Secretary's position was substantially justified given that SSA administrative errors were the sole cause of appellant's receiving mother's benefits; and how the Secretary could have been substantially justified in pursuing repayment in spite of the fact that his position "was not supported by substantial evidence."
 
 
 43
 The description of the "at fault" determination in Jefferson and Harrison as "highly subjective" is surely correct. And in some circumstances, a reference to this description might suffice to explain denial of fees under the EAJA. But where, as here, the "peculiar circumstances" point persuasively to the award of fees, a decision denying fees must be explained by reference to these circumstances.[5] To accept as sufficient reliance on a general, unspecific description of the at fault issue would effectively insulate the discretionary ruling from review, a result contrary to the Supreme Court's command that discretionary rulings must not be "unfettered by meaningful standards or shielded from thorough appellate review." Albemarle Paper Co. v. Moody, 422 U.S. 405, 416 (1975).
 
 
 44
 We, therefore, remand for reconsideration in light of the views expressed in this opinion.
 
 
 45
 VACATED AND REMANDED.
 
 
 
 [1]
 "Mother's benefits" are benefits awarded to widows with children under the age of sixteen so long as they meet certain financial requirements. See 20 C.F.R. Sec. 404.339
 
 
 [2]
 Recovery of an overpayment may be waived if the recipient shows: (1) she was without fault in connection with the overpayment, and (2) recovery would either defeat the purposes of the Social Security Act or be against equity and good conscience. 42 U.S.C. Sec. 404(b); 20 C.F.R. Sec. 404.506
 
 
 [3]
 These facts are taken from the magistrate's Memorandum and Recommendation, which was adopted by the district court without change or exception. As the Secretary elected not to appeal the adverse ruling on the underlying merits issue, he is bound here by the facts as found by the magistrate and adopted by the district court
 
 
 [4]
 Since appellant was not then receiving any benefits in her own right, she was not required to submit a statement of income. As appellant's application for mother's benefits stated, annual reports were only required if appellant "received some benefit payment." Application for Mother's Insurance Benefits at 4
 
 
 [5]
 Harrison v. Heckler, 746 F.2d 480 (9th Cir.1984) and Jefferson v. Bowen, 794 F.2d 631 (11th Cir.1986) do not help explain the denial of EAJA fees in this case. Neither Harrison nor Jefferson is an EAJA fee case. Nor do inferences from Harrison and Jefferson support the district court's denial of fees. Both decisions reversed the Secretary's at fault determination as "not supported by substantial evidence." Harrison, 746 F.2d at 483; Jefferson, 794 F.2d at 634. And in both, the claimants were found not to be at fault in connection with the erroneous payment and receipt of certain benefits. Harrison, 746 F.2d at 483; Jefferson, 794 F.2d at 634. But the claimants in Harrison and Jefferson, unlike appellant, knew they were receiving contested benefits. Harrison, 746 F.2d at 481; Jefferson, 794 F.2d at 632. Thus, the conclusion in the instant case that appellant was not at fault is even more compelling than the similar results reached in Harrison and Jefferson