**John JONES, Jr., Plaintiff-Appellant,**

**v.**

**Otis R. BOWEN, Secretary of Health and Human Services, Defendant-Appellee.**

**No. 86–7124**
**Non-Argument Calendar.**

United States Court of Appeals, Eleventh Circuit.

Dec. 8, 1986.

Rehearing and Rehearing En Banc Denied Feb. 23, 1987.*

---

* See 813 F.2d 411.

John L. Cole, Birmingham, Ala., for plaintiff-appellant.

Frank W. Donaldson, U.S. Atty., Jenny L. Smith, Asst. U.S. Atty., Birmingham, Ala., for defendant-appellee.

Before TJOFLAT, HATCHETT and CLARK, Circuit Judges.

PER CURIAM:

John Jones, Jr. appeals from the judgment of the district court affirming the Secretary's denial of his claim for disability insurance benefits. Because the Secretary employed correct legal standards and the evidence is sufficient to support the Secretary's determination, we affirm.

## BACKGROUND

On January 27, 1982, John Jones, Jr. filed an application for disability insurance benefits. He alleged that he had been disabled since December 12, 1981, due to back problems, gout, and high blood pressure. His earnings record established that he had disability insurance status through June 30, 1983. Jones's application was denied initially and upon reconsideration.

Following these denials, Jones received a hearing before an administrative law judge (ALJ). Jones, 54–years-old at the time of the hearing, testified that he had a 10th grade education and experience as a sand mixer, automobile mechanic, and security guard. He testified that he had to leave his job as a security guard due to severe back pain, hurting arms when he lifted over twenty pounds, blurred vision, and swelling of his toe and knee during gout flare-ups. As of November 30, 1983, Jones's daily activities consisted of lying around the house, house cleaning, and repairing his car.

The medical evidence included clinic notes from the Birmingham, Alabama, Veterans Administration Medical Center from 1980 to 1982, which indicated that Jones's

primary problems were hypertension and obesity. Jones's hypertension was fairly well controlled, although he suffered slight side effects from his medication. His weight hovered around 290 pounds even though he was put on a strict diet.

In February, 1982, Dr. Christopher W. Old examined Jones and noted, among other things, an elevated blood pressure rate, a normal range of motion in the back and extremities, pain upon moving the left knee and lumbosacral spine, and chest pain which had to be evaluated further.

In April, 1982, Dr. Richard L. Cox, Jr. put Jones through a graded exercise test. The electrocardiogram showed premature ventricular contractions in an inferolateral ischemia pattern. Jones tested positive for ischemia after exercise treadmill testing.

In November, 1982, Jones was admitted to the Brookwood Medical Center in Homewood, Alabama, for "newly discovered" diabetes mellitus. This condition was brought under control with insulin injections.

In January, 1983, Dr. Bry H. Coburn examined Jones for visual disability and diagnosed a moderate left eye cataract, which he attributed to diabetes mellitus. Dr. Coburn predicted that the condition would worsen but recommended "glasses only at this time."

The ALJ found that Jones suffered from ischemic heart disease, hypertension, diabetes mellitus, gout, lower back pain, and a left eye cataract. A vocational expert testified that a man with impairments similar to Jones's could return to his prior work as a security guard. Accordingly, the ALJ found that Jones was not disabled within the meaning of the Act prior to the expiration of his insured status in June, 1983.

After the Appeals Council denied Jones's request for review, he brought this action in district court. The district court remanded the case to the Secretary because the ALJ failed to determine whether Jones's ischemia met or equalled the criteria for disabling impairments listed in appendix I of part 404 of the regulations.

At the supplemental hearing, Jones reiterated his prior testimony. He also testified that when he worked as a security guard his medication made him fall asleep, and that his wife had to go to work with him to keep him awake. He also testified that he had lost twenty pounds since the last hearing.

The medical evidence adduced for this hearing included a report of an examination by a cardiologist, Dr. Harold P. Settle. Dr. Settle's impressions included controlled hypertension, diabetes mellitus, a chest pain syndrome suggesting ischemic heart disease and angina pectoris, obesity, and lower back pain.

In May, 1984, Dr. Bert Wiesel reviewed the evidence and concluded that Jones's ischemic heart disease was his primary impairment and that his hypertension and diabetes mellitus were under control. Dr. Wiesel concluded that no objective findings of lumbar spine disease substantiated Jones's complaints of lower back pain, and Jones's impairments did not meet or equal the listings.

Dr. Terry G. Petry, Jones's treating physician since 1983, opined that he was disabled due to angina and high blood pressure.

In January, 1985, Dr. Irwin Lewis conducted a neurological examination and reported that he found little to suggest a significant organic neurological disease, although he considered occult hypothyroidism a possibility. Dr. Lewis completed a physical capacities evaluation and stated that Jones could sit for four hours, stand for one hour, walk around for an hour at a time, and lift up to twenty pounds. He concluded that Jones did not have to be restricted from working at unprotected heights, but should be restricted from exposure to marked changes in temperature, humidity, dust, fumes, and gasses. He also concluded that Jones should not be around moving machinery.

The ALJ found that although Jones had severe impairments secondary to ischemic heart disease, obesity, and back pain, he did not have an impairment prior to June

30, 1983, listed in, or equal in severity to an impairment in the listings. The ALJ then found that prior to June 30, 1983, Jones had the residual functional capacity for a full range of sedentary work and that he could perform his past relevant work as a gate security guard. Thus, the ALJ found that Jones was not disabled or entitled to disability insurance benefits. The Appeals Council adopted the ALJ's report, with modifications. The district court granted Jones's motion to reopen the record, but ultimately found that the Secretary's decision was supported by substantial evidence.

## DISCUSSION

On appeal, Jones contends: (1) that the ALJ failed to sufficiently explain her credibility determination; (2) that the ALJ's determination that he could perform his past relevant work as a security guard is not supported by substantial evidence; (3) that the ALJ failed to accord proper weight to the opinion of his treating physician; and (4) that the ALJ failed to consider whether the combination of his impairments rendered him disabled within the meaning of the Act. We address each contention separately.

1. Whether the Secretary made an improper credibility determination?

The ALJ determined that: "The claimant's testimony concerning his sleepiness, chest pain, loss of vision, back pain and swelling in his legs, knees and feet and their effect on his ability to work prior to June, 1983, was not credible to the extent alleged." This credibility determination was flawed, in Jones's view, because it did not meet the requirement of *Viehman v. Schweiker*, 679 F.2d 223, 228 (11th Cir. 1982) and because the medical evidence provided a basis for his complaint. The Secretary points out that the Appeals Council modified the ALJ's credibility determination and articulated specific reasons for rejecting Jones's testimony.

■ As Jones points out, *Viehman v. Schweiker* requires the fact finder to articulate reasons for questioning a claimant's

credibility when his testimony is critical. *Viehman* at 228. Moreover, in *MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir. 1986), we stated that the Secretary must give specific reasons for discrediting testimony regarding subjective pain which is supported by clinical evidence of a condition that can reasonably be expected to produce the symptoms of which the claimant complains. *MacGregor* at 1054.

■ In this case, the ALJ's statement that Jones's testimony concerning the effect of his impairments on his ability to work "was not credible to the extent alleged" is clearly insufficient to meet the above standards. The Appeals Council, however, recognized the shortcoming and set forth more specific reasons for not fully crediting Jones's testimony: "The claimant's subjective complaints of pain and sleepiness are not credible in light of the absence of pain medication, medical treatment for sleepiness, the absence of medical reference to chest pains, and the absence of nitroglycerine for relief of angina prior to June 30, 1983." It should be noted that neither the ALJ nor the Appeals Council totally rejected Jones's testimony; they simply found that it was not credible *to the extent alleged* given the medical evidence in the record. Thus, we find no error in the Secretary's credibility determination.

2. Whether the ALJ's determination that Jones could perform his past relevant work was supported by substantial evidence?

Jones contends that the Secretary's determination that he could perform his past relevant work as a gate security guard prior to June 30, 1983, is not supported by substantial evidence because he suffered from excessive sleepiness which kept him from performing that job, or engaging in any other gainful employment. The Secretary contends that Dr. Lewis's examination report and the testimony of Dr. William A. Crunk, Jr., a vocational expert, provided substantial evidence for the Secretary's conclusion that Jones could perform the

type of job that he performed before he claimed disability.

A claimant for disability insurance benefits bears the burden of proving that he is unable to perform his previous work. *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir.1983). In determining whether the claimant has satisfied this initial burden, the examiner must consider four factors: (1) objective medical facts or clinical findings; (2) the diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education, and work history. *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir.1983).

Dr. Irwin Lewis, to whom Jones was referred to examine complaints of sleepiness, found Jones to be hypersomnolent most of the time. He attributed the condition to the multiplicity of medications that Jones took, obesity, and pulmonary disorders. Dr. Lewis opined that Jones retained the capacity to perform a limited range of sedentary work activities. William W. Stewart, a vocational expert, testified at the first hearing that a man with impairments similar to Jones's could work as a security guard. Dr. William A. Crunk, Jr., a vocational expert who testified at the supplemental hearing, opined that a man with Jones's impairments could perform light and sedentary work and that sedentary security job positions existed. He also indicated that *if Jones experienced pain and sleepiness to the extent alleged, he would be unable to work.* As the district court noted, the Secretary's decision was not supported by overwhelming evidence—but it did not have to be; rather, we find that the evidence *was sufficient* to support a decision that Jones could perform his past relevant work.

3. Whether the Secretary failed to accord proper weight to the opinion of Jones's treating physician?

Dr. Petry, who became Jones's treating physician in 1983, provided objective evidence to substantiate his conclusions that Jones suffered from heart disease, hypertension, diabetes, and intermittent gouty arthritis. In September, 1984, Dr. Petry opined that Jones was "totally disabled from the standpoint of gainful employment," and that Jones appeared to be "genuinely sincere about wanting to work and would work if he could." It is well settled that, absent "good cause," the opinion of a claimant's treating physician must be accorded "substantial" weight. *Broughton v. Heckler*, 776 F.2d 960, 961 (11th Cir. 1985).

In this case, the Secretary showed good cause for not relying on Dr. Petry's opinion that Jones was disabled. The ALJ stated that

> although the opinion of a treating physician is entitled to substantial weight and greater weight than the opinion of a consulting physician, that opinion is not determinative of the issue of disability. Cardiac catherterization on February 27, 1985, established that the claimant currently meets the criteria of Section 4.04B7(b) of Appendix 1, Subpart P, Regulation No. 4. He has total occlusion of the right coronary artery at the origin. However, a finding that the claimant met or equalled the criteria of Section 4.04B7(b) prior to June 30, 1983, would be quite speculative.

The ALJ went on to note that several consultants reviewed the medical evidence and concluded that Jones's impairments did not meet or equal the listed impairments in Appendix 1.

Jones contends that the ALJ erred by crediting the reports of non-examining, non-treating physicians. It is not improper, however, for an ALJ to consider such reports—as long as the opinion of the treating physician is accorded proper weight. And, as we stated before, the Secretary in this case stated "good cause" for not according Jones's treating physician's opinion the "substantial weight" normally required. Thus, the Secretary did not err.

4. Whether the ALJ failed to properly evaluate the combined effects of Jones's impairments?

Jones contends that the ALJ failed to consider the combined effects of his impairments. The Secretary contends that the ALJ considered the combined effect of Jones's impairment during an assessment of Jones's residual functional capacity.

■ It is now well settled that the ALJ must consider the combined effects of a claimant's impairments in determining whether he is disabled. In *Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir.1984), we stated that

> where ... a claimant has alleged a multitude of impairments, a claim for social security benefits based on disability may lie even though none of the impairments, considered individually, is disabling. In such instances, it is the duty of the Administrative Law Judge to make specific and well articulated findings as to the effect of the combination of impairments and to decide whether the combined impairments caused the claimant to be disabled.

Here, the ALJ stated explicitly that the medical evidence did not establish the existence of an impairment or a combination of impairments which rendered Jones disabled under the Act. The Appeals Council reiterated the ALJ's determination regarding the combined effects of Jones's impairments. Of course, the Secretary could have set forth more specific findings regarding the effect of the combination of impairments on Jones's ability to work; however, given the ALJ's exhaustive consideration of the effect of these impairments on Jones's residual functional capacity, we conclude that the Secretary's findings were sufficient under the standards set forth above.

## CONCLUSION

For the foregoing reasons, we affirm the district court's decision to uphold the Secretary's ruling.

**AFFIRMED**