Joyce M. JOHNS, Plaintiff-Appellant,

v.

Otis R. BOWEN, Secretary of Health and Human Services, Defendant-Appellee.

No. 86–3106.

United States Court of Appeals, Eleventh Circuit.

July 14, 1987.

**552**

William C. Davis, Jr., Jacksonville, Fla., for plaintiff-appellant.

John E. Lawlor, III, Asst. U.S. Atty., Jacksonville, Fla., for defendant-appellee.

Before ANDERSON and CLARK, Circuit Judges, and SIMPSON *, Senior Circuit Judge.

PER CURIAM:

Joyce M. Johns appeals from the district court's judgment affirming the determination of the Secretary that she is not entitled to social security disability insurance benefits because of her ability to perform sedentary work. In making this determination, the Administrative Law Judge (ALJ), whose findings were adopted by the Secretary, found Johns' complaints of pain not to be credible. Because the ALJ failed to use the proper standards for determining whether Johns' pain is disabling, we vacate that part of the decision and remand the case for further proceedings consistent with this opinion.

## I. BACKGROUND

Johns appeals from the denial of her third application for social security disability insurance benefits, which was filed on June 14, 1983. Johns' two previous applications were denied at the administrative level, and she did not seek judicial review. Johns' current application alleges that she has been disabled since February 25, 1981, because of spondylitis, polymyalgia rheu-

matica, osteoporosis, acute intermittent porphyria, lupus, myeloma, anemia, and cranial arteritis, which makes her extremely nervous. The application was denied initially and upon reconsideration.

Johns received a hearing before an ALJ on April 2, 1984. At the hearing, Johns testified that she was fifty years old and had a tenth grade education. At the time of the hearing, Johns' height was five feet, four inches, and her weight had declined from 182 pounds to 168 pounds, although she was not on any diet. Johns testified that she had worked at Lerner's, a women's apparel company, for seventeen years in several positions, including cashier, credit clerk, credit manager, store manager and payroll clerk. In 1978, she asked to transfer from the position of store manager to payroll clerk because of her health. In 1980, Johns requested that her work-load be reduced to three eight-hour days per week. On February 25, 1981, she took a thirty-day leave of absence from her payroll clerk position. She did not return to work.

In response to a question by the ALJ as to the primary reason why she was not working, Johns stated "pain" and explained she was unable to sit, lie, stand, or walk for any long period of time. Upon further inquiry as to which medical condition constituted her primary complaint, Johns responded that it was her polymyalgia rheumatica. Johns testified further that during a typical day she was able to read for about forty-five minutes, play a couple of songs on the piano, pick up her four-pound dog and walk with it a very short distance, cook, and do light housework that did not involve bending. Johns stated that she was unable to sit longer than thirty minutes, walk or drive more than one block (because she was unable to turn her head or the steering wheel and feared blackouts), shop, vacuum, or reach into the cupboard.

The medical evidence consists of the following reports compiled during the years

---

* Judge Simpson did not participate in the decision in this case and the decision is by quorum.

28 U.S.C. § 46; Circuit Rule 3.

1981–1984. On March 30, 1981, Dr. John B. Ross, a specialist in internal medicine and Johns' treating physician, wrote that his patient's problems were incapacitating and that her health would benefit from a cessation of work.

On January 31, 1982, Johns was admitted to the hospital with various symptoms. Dr. William J. Harrington diagnosed anemia of chronic disease, and noted no evidence of myeloma or porphyria. Johns was discharged three days later in satisfactory condition. On May 9, 1982, Johns was admitted to the hospital with a new complaint of pain in her right hip, in addition to previously undiagnosed symptoms. Dr. Ross' discharge report of May 14, 1982, noted apparent pain in Johns' lower back, indicating anemia, and an x-ray revealing degenerative disc space. Dr. Ross' discharge diagnosis was polymyalgia rheumatica, based on Johns' anemia, elevated sedimentation rate, and complaints of pain in her neck, shoulder and pelvic area. The physician prescribed pain medication, including prednisone, that Johns later discontinued because of its side effects.

On January 11, 1983, Dr. William V. Choisser, a family practitioner, examined Johns and reported that she had a full range of motion. Dr. Choisser diagnosed: mild anemia of chronic disease, polymyalgia, and spondylitis by history with little objective evidence; acute intermittent porphyria by history, with an unconfirmed diagnosis; and no evidence of lupus. He noted that Johns did no lifting, stayed inside and lay in bed most of the day, and could walk a half a mile on a good day.

In April, 1983, Dr. A.N. Reddy, a specialist in internal medicine and rheumatology, examined Johns at the request of her insurance carrier. Dr. Reddy's report noted her complaints of pain in her shoulders, neck and chest, and observed that her history was not suggestive of classic polymyalgia rheumatica. The doctor diagnosed chronic anemia. Dr. Reddy referred Johns to Dr. Neil Abramson, who did not rule out a diagnosis of polymyalgia rheumatica or temporal arteritis.

On August 4, 1983, Dr. Rigoberto Fernandez examined Johns at the request of the medical disability examiner. Dr. Fernandez found that Johns had limited movement in her upper extremities caused by pain in the cervical area, and limited flexibility in her back and spine due to neck pain. Dr. Fernandez diagnosed: low back pain by history with normal range of motion and 1982 x-rays revealing acute spondylitis; possible polymyalgia rheumatica, multiple myeloma, or cranial arteritis, although unconfirmed by biopsy; osteoporosis of the spine with multiple pain by history; acute intermittent episodes of porphyria confirmed with tests; history of rheumatoid arthritis suggested by high sedimentation rate; chronic anemia by history; unconfirmed lupus; history of blackout spells and blurry vision; and moderate obesity.

On September 6, 1983, Dr. Ross reported that Johns' polymyalgia rheumatica condition is variable and sometimes incapacitating, that her medication may aggravate her osteoporosis, and that her temporal or cranial arteritis may diminish her vision and cause other eye problems. Dr. Ross concluded his report with the statement that "I believe Mrs. Johns' health is better served by her not working." On September 13, 1983, Dr. Ross informed the Office of Disability Determinations that it would be "next to impossible to estimate the severity and course of Mrs. Johns' primary disease." On March 27, 1984, Dr. Ross again reiterated the conclusion that "gainful employment for Joyce Johns is no longer possible."

The ALJ conducted the proper inquiry under 20 C.F.R. § 404.1520 (1986) and found that Johns suffered from severe polymyalgia rheumatica, but did not have an impairment or combination of impairments listed or equal to those found in App. 1, Subpt. P, Reg. No. 4. The ALJ denied Johns benefits because he concluded that she retained the residual functional capacity to perform work of a sedentary nature, such as her past work as a payroll clerk. The ALJ concluded that Johns' impairment did not prevent her from performing her past relevant work and therefore she was

not disabled. The ALJ rejected Dr. Ross' conclusions regarding Johns' ability to work, and Johns' allegations of chronic pain of a disabling nature. Johns' request for review by the Appeals Council was denied.

On appeal, Johns first contends that there is insufficient evidence to substantiate the ALJ's conclusion that, despite her severe impairment, she retains the residual functional capacity to perform her past relevant work. Specifically, Johns argues that the ALJ erroneously rejected the opinion of Dr. Ross, her treating physician, and unduly relied upon the report of Dr. Sanford Cobb, a non-examining physician. Second, Johns claims that the ALJ failed to consider properly her allegation of disabling pain. We find merit only in Johns' second claim and remand the case for further findings consistent with this opinion.

## II. DISCUSSION

A claimant is entitled to disability benefits when she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment...." 42 U.S.C. § 423(d)(1)(A) (1982). The claimant bears the initial burden of proving that she is unable to perform her previous work. *Jones v. Bowen*, 810 F.2d 1001 (11th Cir. 1986). It is well established that "[i]n determining whether the claimant has satisfied this burden, the examiner must consider four factors: (1) objective medical facts or clinical findings; (2) the diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education, and work history." *See, e.g., id.* at 1005 (citation omitted).

We must uphold the decision of the ALJ if it is supported by substantial evidence.

*Richardson v. Perales*, 402 U.S. 389, 390, 401, 91 S.Ct. 1420, 1422, 1427, 28 L.Ed.2d 842 (1971); *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir.1986).

### A. Sufficiency of the Evidence

Johns challenges the ALJ's finding that she retains the residual functional capacity to perform sedentary work [1] on the ground that he erroneously rejected the opinion of her treating physician, Dr. Ross, and instead relied upon the report of Dr. Sanford Cobb, an employee of the Department of Health and Human Services, who reviewed Johns' file but did not examine her. On two occasions, Dr. Ross indicated that Johns would benefit from a cessation of work. On a third occasion, Dr. Ross determined that Johns was unable to return to work. However, Dr. Cobb found that Johns was capable of performing medium work.[2]

It is established that the ALJ must accord "substantial" or "considerable" weight to the opinion of a claimant's treating physician, absent "good cause" to the contrary. *Broughton v. Heckler*, 776 F.2d 960, 961 (11th Cir.1985). The requisite "good cause" is not provided by the report of a nonexamining physician because the opinion of such a person is entitled to little weight if it contradicts the opinion of the claimant's treating physician. *Id.* at 962. However, we need not consider further whether the ALJ erroneously rejected Dr. Ross' opinion on the basis of Dr. Cobb's report. Contrary to Johns' contention, we find no evidence that the ALJ relied upon Dr. Cobb's report. The ALJ summarized the medical findings and diagnoses of Drs. Ross, Harrington, Choisser, Reddy, and Fernandez, all of whom examined Johns, but made no reference whatsoever to Dr. Cobb's report.

---

1. Sedentary work "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a) (1986).

2. Medium work "involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. § 404.1567(c) (1986). *See also id.* § 404.1567(a) and (b).

Although the opinion of a claimant's examining physician is accorded substantial weight, it is not necessarily dispositive on the issue of disability. *See Jones,* 810 F.2d at 1005. The opinion of the treating physician regarding disability or inability to work may be discounted if it is unsupported by objective medical evidence or is merely conclusory. *See Schnorr v. Bowen,* 816 F.2d 578, 582 (11th Cir.1987); 20 C.F.R. § 404.1527.[3] In this case, the ALJ had good cause for not according substantial weight to Dr. Ross' statements concerning Johns' inability to continue working because all three statements were conclusory and unsupported by objective medical findings. On March 30, 1981, Dr. Ross reported only that Johns' "medical problems are somewhat bizarre, but ... certainly incapacitating." On September 6, 1983, Dr. Ross wrote to Johns' attorney that the claimant's polymyalgia rheumatica is a "variable disease and [is] sometimes incapacitating." In a subsequent letter to Johns' attorney on March 27, 1984, Dr. Ross merely confirmed the claimant's diagnosis of polymyalgia rheumatica, noted her reluctance to take prednisone because of its side effects, and concluded that gainful employment for her was no longer possible. These opinions omit any discussion of why the disability makes it impossible for the claimant to be gainfully employed, or the nature or permanence of the disability.

Subject to further findings upon remand regarding whether Johns is disabled by pain, we conclude that the evidence supports a finding that the claimant can perform sedentary work, which includes her past relevant work as a payroll clerk.

## B. *Disabling Pain*

Johns challenges the ALJ's rejection of her claim that she suffers from chronic disabling pain, which precludes her from engaging in gainful employment. The ALJ found that in light of Johns' appearance at the hearing, and the absence of sufficient medical evidence, her allegations of chronic pain of a disabling nature were not fully credible. We need not decide whether Johns' alleged pain indeed prevents her from returning to work in order to conclude that the ALJ both failed to apply the correct legal standard and made an improper credibility determination.

In 1984, Congress established a new, temporary standard for evaluating subjective evidence of pain. *See* 42 U.S.C. § 423(d)(5)(A) (Supp. III 1985);[4] *see also* 20 C.F.R. § 404.1529.[5] This court has held

---

**3.** The regulation provides:
**Conclusion by physicians concerning your disability.**
We are responsible for determining whether you are disabled. Therefore, a statement by your physician that you are "disabled" or "unable to work" does not mean that we will determine that you are disabled. We have to review the medical findings and other evidence that support a physician's statement that you are "disabled."
20 C.F.R. § 404.1527 (1986).

**4.** The statute provides:
An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Secretary may require. An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section; there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all evidence required to be furnished under this paragraph (including statements of the individual or his physician as to the intensity and persistence of such pain or other symptoms which may reasonably be accepted as consistent with the medical signs and findings), would lead to a conclusion that the individual is under a disability. Objective medical evidence of pain or other symptoms established by medically acceptable clinical or laboratory techniques (for example, deteriorating nerve or muscle tissue) must be considered in reaching a conclusion as to whether the individual is under a disability.
42 U.S.C. § 423(d)(5)(A) (Supp. III 1985).

**5.** The regulation provides:
**How we evaluate symptoms, including pain.**
If you have a physical or mental impairment, you may have symptoms (like pain, shortness of breath, weakness or nervousness). We consider all your symptoms, including pain, and the extent to which signs and laboratory findings confirm these symptoms. The effects of all symptoms, including severe and prolonged pain, must be evaluated

that Congress intended the new standard to apply to all cases then pending before either the Secretary or the court. *Landry v. Heckler,* 782 F.2d 1551 (11th Cir.1986). The law requires the Secretary

> to consider a claimant's subjective testimony of pain if [he] finds evidence of an underlying medical condition, and either (1) objective medical evidence to confirm the severity of the alleged pain arising from that condition or (2) [that] the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain.

*Mason v. Bowen,* 791 F.2d 1460, 1462 (11th Cir.1986) (citation omitted).

■ The medical reports provide substantial evidence of an underlying medical condition of polymyalgia rheumatica, among other impairments, thus satisfying the threshold prong of the above standard. The ALJ appears to have examined the first prong of the second part of the test, concluding that there was insufficient medical evidence to substantiate Johns' claim of chronic, disabling pain. However, the ALJ failed to consider the alternative way in which a claimant can satisfy the test, i.e., whether Johns' medical condition could reasonably be expected to produce the alleged pain. Because the ALJ was bound to consider this, we remand the case to permit a determination of whether Johns has satisfied the second prong of the latter part of the above test. *Jackson v. Bowen,* 801 F.2d 1291, 1294 (11th Cir.1986). We observe that the diagnosis of polymyalgia rheumatica was based, in part, upon Johns' complaints of pain.[6] Indeed, polymyalgia rheumatica is defined as "[p]ain and stiffness affecting the muscles of the neck and shoulders, and later involving also the muscles of the hips and thighs. It is said to occur more often in women, in middle and later years." J. Schmidt, *Attorneys' Dictionary of Medicine & Word Finder* (1986). Johns shall be given the opportunity to submit additional evidence in this regard.

■ We also find that the ALJ made an improper credibility determination when he rejected Johns' complaints of pain on the bases of his own observations of her appearance at the hearing and his own criteria for evaluating pain. The ALJ stated as follows:

> At the hearing itself claimant gave no evidence of having any difficulty turning her head. She was closely observed because of her many complaints and she gave no outward sign of pain or discomfort. Despite her testimony about being in pain all the time, she had taken no medication on the day of the hearing.
>
> . . . .
>
> In evaluating the credibility of allegations regarding the severity of pain all factors should be considered. Constant or unremitting pain is an appetite depressant. Generally speaking if an individual has suffered severe and constant pain over a long period of time there are physical signs observable such as drawn features, weight loss and muscle atrophy due to dysfunction. In addition a person suffering from constant pain rarely if ever presents an outward appearance of good health. At the hearing claimant did not appear preoccupied with personal discomfort and the testimony was direct and to the point. No outward obvious abnormalities were noted. The evidence discloses a fairly even weight record.

Hearing Decision (May 25, 1984), Record, Vol. 2 at 18.

---

on the basis of a medically determinable impairment which can be shown to be the cause of the symptom. We will never find that you are disabled based on your symptoms, including pain, unless medical signs or findings show that there is a medical condition that could be reasonably expected to produce those symptoms.
20 C.F.R. § 404.1529 (1986).

**6.** Dr. Ross diagnosed polymyalgia rheumatica on the basis of Johns' anemia, elevated sedimentation rate and complaints of pains in her neck, shoulder and pelvic area. In addition, Dr. Fernandez found that Johns had limited movement and flexibility due to pains in her cervical area and neck, and a history of lower back and spinal pain. He concluded that she had possible polymyalgia rheumatica.

Subjective pain testimony supported by objective medical evidence of a condition that can reasonably be expected to produce the symptoms of which claimant complains is sufficient to sustain a finding of disability. *MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir.1986); 42 U.S.C. § 423(d)(5)(A) (Supp. III 1985). Where the claimant's testimony is critical, the fact finder must articulate adequate reasons for questioning a claimant's credibility. *See Jones*, 810 F.2d at 1004. Although credibility determinations are reserved to the ALJ, this court has condemned use of the "sit and squirm" test. *See, e.g., Wilson v. Heckler*, 734 F.2d 513, 517 (11th Cir.1984).

The ALJ determined that Johns did not suffer pain of a disabling nature, in part because of her lack of preoccupation with personal discomfort during the hearing, her lack of obvious abnormalities, and her "fairly even weight record."[7] The ALJ developed his own indicia for measuring claimant's pain, including drawn features, weight loss and muscle atrophy. Thus, the ALJ improperly engaged in "sit and squirm" jurisprudence, substituted his own criteria for measuring pain, and erroneously considered only objective medical evidence, to evaluate claimant's testimony about her pain. *Wilson*, 734 F.2d at 518. Because of these errors, this case must be remanded to the Secretary for further consideration under the proper standards. *Id.*

### III. CONCLUSION

We find that the ALJ failed to apply the proper standards to determine whether Johns' complaint of disabling pain is credible and would diminish any residual functional capacity to work that she may otherwise have. We vacate that part of the decision and remand the case for further proceedings consistent with this opinion.

AFFIRMED in part, VACATED and REMANDED in part with instructions to remand to the Secretary.

---

**7.** Contrary to this conclusion, Johns did not have a fairly even weight record. When the ALJ asked her if she weighed 182 pounds, she

---

replied that her weight was down to 168 pounds, although she was not on any diet. Record, Vol. 2 at 26.