**Harold GANT, Plaintiff,**

v.

**Louis R. SULLIVAN, M.D., Secretary, Department of Health and Human Services, Defendant.**

**No. 90–0097–CIV.**

United States District Court, S.D. Florida.

Aug. 1, 1991.

Elizabeth Read, Miami, Fla., for plaintiff.

Robert Senior, Asst. U.S. Atty., for defendant.

ORDER AFFIRMING MAGISTRATE'S REPORT AND RECOMMENDATION

ARONOVITZ, District Judge.

THIS CAUSE came before the Court upon Plaintiff's Motion for Summary Judgment and Defendant's Cross–Motion for Summary Judgment.

THE MATTER was referred to the Honorable William C. Turnoff, United States Magistrate Judge. A Report and Recommendation dated April 22, 1991 has been filed, recommending that Plaintiff's Motion for Summary Judgment be GRANTED, that Defendant's Cross–Motion for Summary Judgment be DENIED, and that the Secretary of Health and Human Services' decision be REVERSED and REMANDED for an award of disability benefits consistent with the Report and Recommendation.

The Secretary has filed no objections to the Magistrate's Report and Recommendation.

The Court has reviewed the entire file and record herein, and being otherwise fully advised in the premises, it is

ORDERED AND ADJUDGED that United States Magistrate Turnoff's Report and Recommendation of April 22, 1991 be, and the same is, hereby RATIFIED, AFFIRMED and APPROVED in its entirety. Based thereon, the Secretary of Health and Human Services' decision is REVERSED and this Cause is REMANDED to the Secretary for an award of benefits consistent with this Opinion.

DONE AND ORDERED.

## REPORT AND RECOMMENDATION

WILLIAM C. TURNOFF, United States Magistrate Judge.

This is a review of a final decision by the Secretary of the Department of Health and Human Services (hereinafter "Secretary") who has denied Plaintiff's application for disability insurance benefits. United States District Judge Sidney M. Aronovitz has referred this matter to the undersigned for a review of the administrative record and preparation of a Report and Recommendation as to whether the administrative decision is supported by substantial evidence. See *Mathews v. Weber*, 423 U.S. 261, 96 S.Ct. 549, 46 L.Ed.2d 483 (1976).

## ADMINISTRATIVE PROCEEDINGS

HAROLD GANT, [hereinafter "Plaintiff,"] filed an application for a period of disability and disability insurance benefits on June 3, 1987. (*Administrative Record*, hereinafter "R", pp. 160–163). Plaintiff alleged a disability onset date of December 18, 1986 caused by a heart attack, inability to use his left hand, left leg numbness, diabetes and hypertension. (*Plaintiff's Motion for Summary Judgment on the Pleadings and Memorandum in Support Thereof* [hereinafter "Plaintiff's Memo"], p. 1). LOUIS W. SULLIVAN, M.D., Secretary of Health and Human Services [hereinafter "Defendant"] denied the Plaintiff's application. Plaintiff appealed the initial denial through reconsideration. Request for review was granted and Plaintiff's claim was remanded to the Administrative Law Judge [hereinafter "ALJ"] for further proceedings. After a hearing on June 14, 1989 Plaintiff's application for benefits was denied. (R., pp. 11–12). Request for review of that decision was also denied. (R., p. 8–10). Plaintiff timely pursued and exhausted all administrative remedies. On January 12, 1990, Plaintiff filed the present action in the United States District Court, for review of the Judge Jose G. Rolon–Rivera's decision, pursuant to 42 U.S.C. § 405(g). Presently pending before this Court are *Plaintiff's Motion for Summary Judgment* (D.E. # 12) and *Defendant's Cross–Motion for Summary Judgment* (D.E. # 22).

## PLAINTIFF'S TESTIMONY

Plaintiff was 42 years old at the time of the hearing before the ALJ. (R., p. 33). Plaintiff is married, has one child and resides in Miami, Florida. (R., pp. 160–163). Plaintiff worked at the Miami Herald for fifteen and one half years. (R., p. 185). While working there Plaintiff performed maintenance which involved cleaning printing presses. During his last six years at the Miami Herald Plaintiff operated the printing presses. (R., p. 34). Plaintiff completed school through the eighth grade, but has difficulty reading. (R., pp. 45, 97).

On December 18, 1986 Plaintiff suffered a heart attack. On February 18, 1987 he had coronary artery bypass surgery. When he woke up from the surgery he could not move his left arm and leg. As a result, he claims that his leg gives out on him when he walks. He has constant pain in his arm. (R., p. 110). Plaintiff takes aspirin as a blood thinner and insulin for diabetes. He also states that he has high blood pressure. (R., pp. 36–37).

Plaintiff testified that he can drive a car but only does so once or twice a week, approximately two and one half miles to his friend's house. (R. pp. 39–40). He can stand and sit for fifteen minute intervals but states that he has a problem doing so. (R., p. 50). He cannot climb stairs. (R., p.

47). He thinks that he could lift a glass or quart of milk but doubts that he can lift twenty pounds. (R., pp. 50–51).

Plaintiff complains of lack of energy. He states that he spends ninety-five percent of his time sleeping in bed. He cannot help with any chores around the house. He has an intolerance for noise. He complains that his "nerves are bad" and the presence of too much activity around him causes him to "snap at people." (R., pp. 43–48).

## MEDICAL EVIDENCE

Treating physician, Dr. Mark Multach, M.D. first examined Plaintiff on April 20, 1987. Dr. Multach reports that since February, 1987 Plaintiff has had no other symptoms that can be related to his heart disease. (R., p. 282). However, Dr. Multach reports that Plaintiff has pain in his left hand and leg due to a left ulnar nerve neuropathy. (R., pp. 300–301). This condition creates an "altered sensation, sometimes burning and sometimes numb, in the third, fourth, and fifth fingers of his left hand." Although it was found that Plaintiff has "good range of motion with his left hand," he has "markedly abnormal sensory in his fingers" and "decreased strength in [his] left hand." With respect to Plaintiff's ability to work with his hands, Dr. Muldach states:

> Mr. Gant does not have sufficient use of his left hand to allow him to perform work which requires any major exertion with his left hand, or any major coordination efforts with his left [hand] as this would pose a threat to him and those working with him.

(R., p. 283).

Dr. Multach instructed Plaintiff not to use his left hand for lifting. Dr. Multach reported that Plaintiff cannot sit or stand for long periods of time. Although therapy and medication are available for peripheral neuropathy, they are not helpful in Plaintiff's case. (R., p. 301). Dr. Multach describes Plaintiff's condition as permanent. Dr. Multach found Plaintiff's diabetes poorly controlled and altered his insulin intake. (R., pp. 301–302).

Consultative cardiologist, Dr. Hugh R. Gilmore III, examined Plaintiff on April 3, 1989. Dr. Gilmore reports that Plaintiff has "recurrent chest pain." The pain is described as "sharp like a knife" and may occur at any time, resting or activity, lasting from minutes to one half hour. (R., p. 367). Dr. Gilmore reports that Plaintiff's initial gait is without a limp but after he has walked about twenty yards, he begins to walk with a limp, favoring the left leg. The left leg then becomes weak. (R., p. 368).

## PSYCHOLOGICAL EVIDENCE

On April 4, 1989, Dr. Stephen Irving, Ph.D., performed a psychological evaluation of the Plaintiff. Dr. Irving performed various tests on Plaintiff including the Extended Diagnostic Interview, Wechsler Adult Intelligence Scale—Revised [1], House–Tree–Person Drawings, Sentence Completion Test, Bender Gestalt, Graham-Kendall Memory for Designs. "An MMPI [Minnesota Multiphasic Personality Inventory] could not be administered because this man was extremely limited in his ability to read and write." (R., p. 373).

With respect to Plaintiff's behavior, Dr. Irving noted that he had some difficulty in understanding instructions and it was periodically necessary to repeat them. He appeared motivated, "related willingly and seemed to be reasonably sincere." (R., p. 373).

The Wechsler Adult Intelligence Scale—Revised (WAIS–R) indicated a Full Scale IQ score of 65 within the Mentally Retarded Range. However, Dr. Irving stated that "a qualitative analysis suggests that this client is not a true mental retardate and, at one time, should have been able to function easily within the Borderline Range." (R., p. 374). The IQ of the Mentally Retarded Range is from 0—69, while the IQ of the Borderline Range is from 70—79. (R., p. 377).

---

1. Wechsler Adult Intelligence Scale is a standardized test useful in establishing the existence of mental retardation, to which the quantitative requirements of the regulations (§ 12.05) refer.

Neuropsychological screening indicated the presence of significant brain dysfunction. Plaintiff's performance on the Graham–Kendall Memory for Designs Test placed him midway in the Critical Range for Brain Dysfunction.

Dr. Irving noted certain personality traits present including lack of self-worth, paranoia and depression. In his personality evaluation of Plaintiff, Dr. Irving stated:

> [i]ndeed this man does seem to be the kind of person who can be expected to always try to do the best he can.

(R., pp. 373–377). It was Dr. Irving's opinion that Plaintiff "is probably not adequately able to manage funds." (R., p. 375).

Psychiatrist, Dr. Lloyd Miller, M.D. examined Plaintiff on May 1, 1989. Dr. Miller did not perform any of the tests that Dr. Irving had previously performed. Dr. Miller assessed Plaintiff's intellectual powers as "less than average," but did not feel that Plaintiff was mentally retarded. Dr. Miller stated "[h]is history of some literacy, some education, and the possession of a driver's license would tend to obviate against mental retardation." He diagnosed Plaintiff as suffering from an adjustment disorder with depressed mood, although not to the point of suicidal. He thought Plaintiff was mentally competent to handle his own financial affairs. (R., pp. 385–387).

### TESTIMONY OF MEDICAL ADVISOR

Dr. Joseph Rubini, a medical advisor, testified at the administrative hearing held on February 8, 1988. Dr. Rubini did not think the Plaintiff could work because "he could not reliably use the lower and upper left extremities." (R., p. 74). As far as improvement, he stated that neuropathy is always slow to improve even under the best conditions because nerve tissue is the slowest growing tissue in the body. (R., pp. 74–75). He felt the problem with the left upper extremity prevented Plaintiff from using it in a work situation. He said that the problem with his left lower extremity would likewise cause problems in a work situation since it buckles. Dr. Rubini stated:

> [w]hat seems to happen is that he loses the strut effect of the leg so that it buckles, it gives way and this tends to make him lose his balance and that would be dangerous and detrimental in attempting to work.

(R., p. 75).

Dr. Rubini stated that "given the fact that his left arm is useless to him, the poor function at times of his leg produces an important situation where he's really paraplegic." (R., p. 75). "He can't for example, if he were to begin to fall do much with his left arm to help himself." (R., p. 76).

Dr. Rubini noted that Plaintiff suffers from depression. He did not believe Plaintiff could tolerate working. (R., pp. 67, 69).

### DECISION OF THE ADMINISTRATIVE LAW JUDGE

The ALJ evaluated Plaintiff's claim using the sequential step process. The ALJ first determined that the Plaintiff has not been engaged in substantial gainful employment subsequent to the onset date of disability. The ALJ next sought to determine whether the medical findings of record establish impairments that significantly limit the claimant's ability to perform work-related functions. The ALJ stated that Plaintiff "has had no complication from his surgery and does not report any significant limitations based on his heart condition." (R., pp. 13–14). Noting that Plaintiff suffers from hypertension and diabetes mellitus, the ALJ indicated the treating physician reports showed that these conditions are "adequately controlled by medication and there are no significant symptoms." (R., p. 14).

The ALJ conceded that Plaintiff has severe impairments characterized by left arm and leg weakness and low intellectual functioning. It was found that these conditions significantly limit the Plaintiff's ability to understand and carry out complex job instructions. (R., p. 15).

The next step of the evaluation process employed by the ALJ was whether Plaintiff's condition meets a listed impairment of Appendix 1 of the Social Security Regula-

tions No. 4. 20 CFR 404.1520(d), thus enabling him to be presumed disabled regardless of his age, education, residual functional capacity and past experience. The ALJ determined that although Plaintiff has "a severe combination of impairments, these are found not to either meet or equal the degree of severity contemplated by any impairment listed in Appendix 1, even when considered in combination." (R., p. 16). The ALJ noted that Plaintiff's condition failed to meet the listing of 11.04 B for peripheral neuropathy "since he does not have impaired gait, station or coordination." Nor did the ALJ find that Plaintiff met any of the cardiovascular impairments since there was "no heart rhythm disturbance, congestive features, severe chest pain, or other abnormalities." (R., p. 16). The ALJ found there was a lack of adequate evidence of mental retardation to constitute a mental impairment under Section 12.05(C). The ALJ relied on Dr. Miller's view that "claimant's history of some literacy, some education, and the possession of a driver's license would tend to obviate against mental retardation." (R., p. 16).

Having not found that any single condition or combination of such conditions met a listed impairment, the ALJ went to the next step of the sequential evaluation. This step requires consideration of Plaintiff's residual functional capacity and his ability to engage in past relevant work. The ALJ found that the Plaintiff is limited to sedentary work where he does not have to sit, stand, or walk for prolonged periods and where he does not have to use his left arm. Further, Plaintiff's intellectual limitations "would preclude activities which require understanding, carrying out and remembering complex job instructions." Relying on the vocational testimony of Dr. John Williams[2], the ALJ found that although Plaintiff cannot perform past relevant work he does have the ability to engage in sedentary jobs. The ALJ noted

that the vocational expert identified jobs which the Plaintiff would be capable of performing and which exist in significant numbers in the national and regional economies. Examples of such jobs include handpacker, gas station attendant, parking lot attendant and cashier. The ALJ therefore determined that the Plaintiff was not disabled and was capable of performing sedentary work. (R., pp. 16–17).

## ANALYSIS

The sole issue before this Court is whether the decision of the Secretary is supported by substantial evidence. *Johns v. Bowen*, 821 F.2d 551, 554 (11th Cir.1987). Substantial evidence is such relevant evidence that a reasonable mind would accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). It is "more than a scintilla but less than a preponderance." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir.1983).

Although the Court's role is limited, the Eleventh Circuit "has consistently emphasized that we must not act as automatons in reviewing the Secretary's decision." *Hale v. Bowen*, 831 F.2d 1007, 1010 (11th Cir.1987). See also, *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir.1986). The limited scope of review does not yield automatic affirmance, for "despite [this] deferential standard for review of claims ... [the] Court must scrutinize [the] record in its entirety to determine reasonableness of decision reached." *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir.1988).

In the present case, Plaintiff asserts that his impairment meets or equals the requirements of 20 C.F.R. 404, Subpart P, Appendix 1, Listed Impairment 12.05(C). Listed Impairment 12.05(C) provides:

**12.05 Mental Retardation and Autism:** Mental retardation refers to a significantly subaverage general intellectual functioning with deficits in adaptive be-

---

**2.** Two vocational experts, John Williams and Robert Lessne, testified at the administrative hearings in this case. However, this Court's decision recommending that Plaintiff meets or equals listing § 12.05(C) obviates the need to

discuss such evidence at length. If a claimant meets an impairment listed in Appendix 1, he will be found disabled without consideration of age, education, and work experience. 20 C.F.R. 404.1520(d).

havior initially manifested during the developmental period (before age 22). (Note: The scores specified below refer to those obtained on the WAIS, and are used only for reference purposes. Scores obtained on other standardized and individually administered tests are acceptable, but the numerical values obtained must indicate a similar level of intellectual functioning.)

C. A valid verbal, performance, or full scale IQ of 60 to 69 inclusive and a physical or other mental impairment imposing additional and significant work-related limitation of function;

Plaintiff argues that the results of the tests taken by Dr. Irving indicate that he is mentally retarded and meets the listed impairment. (Plaintiff's Memo, pp. 10–11). Defendant argues that Plaintiff fails to meet the listing because he must have been mentally retarded prior to reaching the age of twenty-two. Defendant asserts that the record does not show that Plaintiff has a lifelong condition of being mentally retarded, or that the low IQ existed before age 22. (*Defendant's Response to Plaintiff's Motion for Summary Judgment and Defendant's Cross-Motion for Summary Judgment*, [hereinafter "Defendant's Memo"], p. 5).

Although it appears that this specific age requirement has not been addressed by the Eleventh Circuit, other courts have construed the requirement liberally. For example in *Branham v. Heckler* the court reasoned that there are "many possible reasons why an adult would not have obtained an IQ test early in life and the absence of an IQ test during the developmental years does not preclude a finding of mental retardation predating age 22." 775 F.2d 1271, 1274 (4th Cir.1985). Similarly, in *Lucky v. U.S. Department of Health and Human Services*, the Court held that claimant is not required to affirmatively prove that he was mentally retarded prior to reaching the age of twenty-two since there was no evidence that claimant's IQ had changed. The evidence that claimant could barely read or write was a "clear 'manifestation' of mental retardation occurring before age twenty-two." 890 F.2d

666, 667–669 (4th Cir.1989), citing *Turner v. Bowen*, 856 F.2d 695, 699 (4th Cir.1988).

The WAIS–R is the test specifically referred to in listing 12.05(C). Plaintiff's scores on the verbal and performance IQ were 69 and 63 respectively. Under the regulations and governing caselaw the lowest of these scores must be used in conjunction with § 12.05(C). *Edwards v. Heckler*, 736 F.2d 625 (11th Cir.1984). Plaintiff has demonstrated by way of a standardized IQ test (WAIS–R) a score of 63. Pursuant to listing § 12.05 Plaintiff's score falls within the 60 to 69 range, indicating mental retardation.

The ALJ departed from these quantitative findings when he ruled that there was inadequate evidence to support a finding that Plaintiff did not meet the listing. There is no indication in the record that the results of these tests lack reliability or credibility. Nor is it suggested that Plaintiff attempted to do poorly on the exam. On the contrary, Dr. Irving reported that Plaintiff appeared motivated, related willingly and seemed reasonably sincere. (R., p. 373). Dr. Irving noted Plaintiff as being the kind of man who always does the best he can.

Defendant argues that as in *Popp v. Heckler*, Plaintiff's scores are affected by occurrences subsequent to age twenty-two such as organic brain syndrome which results from a diminishing of intellect. 779 F.2d 1497 (11th Cir.1986). In *Popp* the claimant had earned a two year associate degree, was enrolled in his third year of college and had also taught high school algebra. There were indications in the record that the claimant's testimony and performance were not believable. The psychiatrist found that the claimant often exaggerated and embellished his condition. The Eleventh Circuit held that the ALJ was not compelled to find the claimant mentally retarded based solely on the results of the IQ test. Rather, the ALJ should ascertain whether the results are consistent with daily activities and behavior. The court also noted that claimant's score, "if believed" should be the IQ score used in applying listing § 12.05(C). *Id.* at 1499.

In the present case the test results, daily activities and behavior indicate that Plaintiff is mentally retarded within the meaning of Listing § 12.05(C). Despite eight years of schooling Plaintiff is not able to effectively read or write. Dr. Irving was unable to administer the Minnesota Multiphasic Personality Inventory Test because Plaintiff is "extremely limited in his ability to read and write." (R., p. 373). Dr. Irving noted that Plaintiff has difficulty understanding instructions and questions. Substantial evidence does not support the decision of the Secretary that Plaintiff does not meet Listing § 12.05(C).

Defendant argues that Dr. Irving's statement that "a qualitative analysis suggests that this client is not a true mental retardate and at one time should have been able to function in the borderline range" indicates that Plaintiff has not been mentally retarded since age 22. However, the WAIS–R is a quantitative test and is a factor according to the guidelines and caselaw in determining whether Plaintiff meets the requirements of the listing. Further, it was Dr. Irving's diagnosis that Plaintiff suffers from mild mental retardation. Even if such finding refers to Plaintiff's current condition there is nothing in the record that reflects that any change occurred in which Plaintiff suddenly became mentally retarded. The Secretary's decision to discount Plaintiff's test scores, behavior, reading and writing deficiency and his difficulty in understanding is not supported by substantial evidence. Dr. Miller's statement that Plaintiff is not retarded because of "[h]is history of some literacy, some education, and the possession of a driver's license" is neither accurate nor persuasive. The only evidence of literacy in the record is Plaintiff's statement that he reads headlines. Defendant states in addition that Plaintiff testified that "he reads the sports in the newspaper." (Defendant's Memo, p. 7). However, what the transcript of Plaintiff's testimony indicates is that Plaintiff stated "I read alittle [sic] sports but I don't (INAUDIBLE)." (R., p. 45). These two items, reading headlines and an incomplete statement regarding reading sports do not indicate a "history of literacy." Finally, this court does not find that Plaintiff's possession of a driver's license precludes a finding of mental retardation in light of the substantial evidence which supports such a finding.

Having found substantial evidence to support the first prong of Listing § 12.-05(C), the claimant must also show that there is a physical or mental impairment imposing additional and significant work-related limitation of function. An impairment imposes significant limitations when its effect on a claimant's ability to perform basic work activities is more than slight or minimal. *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir.1984). Plaintiff asserts that significant evidence supports such a finding. Plaintiff suffers from significant brain dysfunction, impairments associated with coronary artery disease, left ulnar neuropathy, hypertension and depression. In addition, it was the ALJ's specific finding that Plaintiff suffers from severe impairments.[3] Because Plaintiff's impairments were found to be severe he therefore satisfies the significant limitations standard. *Edwards v. Heckler*, 736 F.2d 625, 630 (11th Cir.1984).

This Court does not agree with the ALJ's decision that Plaintiff's impairment does not meet or equal Listing § 12.05(C). The Secretary's decision is not supported by substantial evidence. Substantial evidence supports a finding that Plaintiff has been disabled since December 18, 1986.

## RECOMMENDATION

Based on the foregoing, it is hereby RECOMMENDED that Plaintiff's Motion for Summary Judgment be GRANTED; Defendant's Cross–Motion for Summary Judgment be DENIED; the Secretary's de-

3. The Administrative Law Judge concedes "claimant has severe impairments characterized by left arm and leg weakness and low intellectual functioning. These impairments significantly limit his ability to engage in prolonged standing, sitting, walking and lifting and carrying 10 pounds maximum. They would also impose significant limitations on understanding and carrying out complex job instructions." (R., p. 15).

cision REVERSED; and this Cause be RE-MANDED to the Secretary for an award of disability benefits consistent with this Recommendation.

Pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), the parties may serve and file written objections with the Honorable Sidney M. Aronovitz, United States District Judge, within ten (10) days after being served with a copy of this Report and Recommendation. See *Nettles v. Wainwright,* 677 F.2d 404 (5th Cir. Unit B 1982).

Respectfully Recommended in Chambers, at Miami, Florida, this 22 day of April, 1991.