[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-10704
Non-Argument Calendar
_____

D.C. Docket No. 6:10-cv-01931-GJK

DELAIZARAH ZGRAGGEN ROSARIO,

Plaintiff-Appellant,

versus

COMMISSIONER OF SOCIAL SECURITY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(September 17, 2012)

Before CARNES, WILSON and MARTIN, Circuit Judges.

PER CURIAM:

Delaizarah Zgraggen Rosario, through counsel, appeals from the district court's order affirming the decision by the Administrative Law Judge (ALJ) denying a period of disability, disability insurance benefits, and social security income, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).  On appeal, Rosario argues that the ALJ erred by according little weight to her treating psychiatrist's medical opinions.  Further, Rosario asserts that the ALJ's hypothetical question to the vocational expert failed to account for her moderate limitations in concentration, persistence, or pace, even though the ALJ found that they existed.

In Social Security appeals, we review the ALJ's decision as the Commissioner's final decision when, as in this case, the ALJ denies benefits and the Appeals Council denies review.  Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001).  We review to determine "whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards.  Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1178 (11th Cir. 2011) (quotation marks omitted).  "We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner]."  Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1996).  If substantial evidence supports the decision we

2

must affirm, even if the proof preponderates against it. Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996).

In determining whether a claimant is disabled, the ALJ must complete a five-step sequential evaluation process. See 20 C.F.R. § 416.920. The claimant must prove first that she "is not undertaking substantial gainful activity" and second that she has a "severe impairment or combination of impairments." Doughty, 245 F.3d at 1278. "At step three, if the claimant proves that [her] impairment meets one of the listed impairments found in Appendix 1, [s]he will be considered disabled without consideration of age, education, and work experience." Id. Otherwise, the claimant must proceed to step four and prove that, based on a residual functional capacity assessment, her impairment prevents her from performing any of her past relevant work. Winschel, 631 F.3d at 1178; Doughty, 245 F.3d at 1278. At the fifth step, the burden shifts to the Commissioner and the ALJ must then determine if there is other work available in significant numbers in the national economy that the claimant can perform. Doughty, 245 F.3d at 1278 & n.2. In doing so, the ALJ relies on the claimant's residual functional capacity, age, education, and work experience. Id. If the Commissioner demonstrates that there are jobs that the claimant can perform, the claimant must prove that she is unable to perform those jobs in order to be found

3

disabled.  See id. at 1278 n.2.

## I.

Rosario first argues that the ALJ erred by according little weight to the opinions of her treating psychiatrist, Dr. Kirmani.  Weighing the opinions and findings of treating, examining, and non-examining physicians is an important part of steps four and five of the disability determination process.  In reaching a decision the ALJ must specify the weight given to different medical opinions and the reasons for doing so.  See Winschel, 631 F.3d at 1179.  Absent good cause, the ALJ must give substantial or considerable weight to the opinions of treating physicians.  Winschel, 631 F.3d at 1179.  A non-examining physician's opinion is entitled to little weight if it is contrary to the treating or examining physician's findings unless good cause is found.  See Lamb v. Bowen, 847 F.2d 698, 703 (11th Cir. 1988); Broughton v. Heckler, 776 F.2d 960, 962 (11th Cir. 1985).

"Good cause exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records."  Winschel, 631 F.3d at 1179 (quotation marks omitted).  We have found good cause where, among other things, the treating physician made conclusory statements regarding the claimant's inability to work without any

discussion of why the disability made it impossible for the claimant to be gainfully employed or the nature or permanence of the disability.  See Johns v. Bowen, 821 F.2d 551, 555 (11th Cir. 1987).  When the ALJ disregards a treating physician's opinion with good cause, she must clearly articulate the reasons for doing so. Winschel, 631 F.3d at 1179.

The ALJ did not err in giving little weight to Dr. Kimani's opinions that Rosario was unable to work.  The ALJ clearly indicated that she gave little weight to Dr. Kimani's opinions because they were inconsistent with Kimani's own findings, notes from the treatment plan, and the overall medical evidence.  As an example, the ALJ highlighted a medical report in which Dr. Kimani concluded that Rosario's concentration was slightly impaired and that she "may be able to work in a limited setting."  In the same report Dr. Kimani concluded that Rosario was incapable of sustaining "work activity for eight hours a day, five days a week."  Dr. Kimani provided no explanation for these seemingly contradictory findings, thereby casting "doubt" on Rosario's inability to work.  See Edwards v. Sullivan, 937 F.2d 580, 583–4 (11th Cir. 1991) (holding that there was good cause for the ALJ not to rely on a treating physician's opinions when there were unexplained, internal inconsistencies).  The inconsistency of Dr. Kimani's opinions with his own findings and the overall medical evidence qualifies as good

5

cause not to give controlling weight to the statements of Rosario's treating psychiatrist.

## II.

Rosario next argues that the ALJ's hypothetical questions to the vocational expert did not adequately account for her limitations in concentration, persistence, or pace. One way that the ALJ may prove that other jobs exist for the claimant under step five is by posing hypothetical questions to the vocational expert to "establish whether someone with the limitations that the ALJ has previously determined that the claimant has will be able to secure employment in the national economy." Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004). "In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." Wilson v. Barnhart, 284 F.3d 1219, 1227 (11th Cir. 2002). Generally, an ALJ does not account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical posed to the vocational expert to simple, routine tasks or unskilled work. See Winschel, 631 F.3d at 1180–81. However, if the "medical evidence demonstrates that [the] claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace" then "limiting the hypothetical to include only unskilled

6

work sufficiently accounts for such limitations." Id. at 1180.

Here, the ALJ's hypothetical questions adequately accounted for the claimant's limitations in concentration, persistence, and pace. In step four's residual functional capacity determination, which reflects the moderate limitations in concentration, persistence, and pace found during steps two and three of the analysis, the ALJ found that the medical evidence demonstrated Rosario's ability, despite her limitations, to perform simple, routine, and repetitive tasks in an environment with only brief interactions with co-workers and the public. The ALJ pointed to the independent assessments of three doctors in support of this conclusion. Dr. Willens, for example, determined that even though Rosario had moderate difficulties with concentration, persistence, and pace she retained the ability to perform simple and routine tasks for six to eight hours per workday on a sustained basis. The hypothetical the ALJ posed to the vocational expert restricted Rosario to the same type of tasks and thereby sufficiently accounted for Rosario's limitations in concentration, persistence, and pace. Accordingly, substantial evidence supports the ALJ's finding that Rosario could perform a significant number of jobs in the national economy.

**AFFIRMED.**